EPISCOPAL RETIREMENT HOMES, INC., APPELLEE, *v.* OHIO DEPARTMENT OF INDUSTRIAL RELATIONS ET AL., APPELLANTS.

[Cite as *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366.]

(No. 90–1051—Submitted March 13, 1991—Decided August 14, 1991.)

368

*Aronoff, Rosen & Stockdale, Gregory Mohar* and *David C. Stockdale,* for appellee.

*Lee I. Fisher,* Attorney General, and *James G. Neary,* for appellants.

*Bricker & Eckler* and *Elisabeth A. Squeglia,* urging affirmance for *amicus curiae,* Ohio Hospital Association.

*Baker, Baker & Sweterlitsch, Martha J. Sweterlitsch* and *Douglas A. Baker,* urging affirmance for *amicus curiae,* Association of Ohio Philanthropic Homes & Housing for the Aging.

*Benesch, Friedlander, Coplan & Aronoff, N. Victor Goodman* and *Mark D. Tucker,* urging reversal for *amicus curiae,* Ohio State Building and Construction Trades Council.

Moyer, C.J. By its terms, Ohio's prevailing wage law applies to all construction projects that are "public improvements" as defined in R.C. 4115.03(C): " 'Public improvement' includes all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof. * * * "

Thus, a project must be constructed "pursuant to a contract with a public authority" and "for a public authority" in order for the prevailing wage statutes to apply. We must determine first whether the lease and sublease between ERH and the Hamilton County Hospital Commission constitute a contract with a public authority, *i.e.*, the county.

The Restatement of the Law 2d, Contracts (1981) 5, Section 1, defines a "contract" as "[a] promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." In order to declare the existence of a contract, both parties to the contract must consent to its terms (see *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney* [1901], 65 Ohio St. 104, 61 N.E. 152); there must be a meeting of the minds of both parties (see *Gaffney, supra*); and the contract must be definite and certain (see *James Ward & Co. v. Wick Bros. & Co.* [1867], 17 Ohio St. 159).

Although both the lease and the sublease discuss and define the projects, neither document sets forth the plans and specifications necessary for construction. Information regarding the work timetable, monetary remuneration and other items on which both parties must agree prior to construction does not appear in these documents. In fact, Section 3.02 of the sublease authorizes ERH to "enter into such construction contracts * * * as it deems necessary or advisable for any acquisition, installation, equipping, constructing, renovations and conversions relating thereto[.]"

ERH's projects are not being constructed pursuant to the lease or the sublease. These documents are not the animating force for the construction and renovation. They are no more than a mechanism for securing repayment of the bond proceeds. The county had no involvement in the planning or approval of the construction and renovation. ERH negotiated the work details with the contractors, and was solely responsible for overseeing the construction work of the contracts it negotiated. Thus, ERH did not agree to construct its projects "pursuant to a contract with a public authority."

R.C. 4115.03(C) also requires that public improvements be constructed "for a public authority." Construction of a project "for a public authority" necessitates that the public authority receive the benefit of the construction, either through maintaining a possessory or property interest in the completed project or through the use of public funds in the construction of the project.

Simply put, the county does not benefit from the construction and renovation of ERH's projects. Undeniably, ERH's projects serve a public benefit. They provide jobs to county residents and improved health care for the aged. However, benefiting the public and benefiting a public authority are separate and distinct functions.

Under the lease/lease-back arrangement, ERH continues to own, operate and control all its health care facilities. By improving its facilities, ERH enhances their value. ERH, not the county, receives the benefit of the increased value of its property. The fact that ERH seeks to construct and renovate its own health care facilities to better serve the public does not mean that the construction and renovation are "for a public authority."

Furthermore, the county has neither a possessory nor a property interest in the projects. ERH owns the properties. In order to give security for the bonds, ERH leased the properties to the county. The county simultaneously subleased the properties back to ERH. The county then assigned all its interest in the sublease to the trustee. Whatever possessory interest the county may have had for the fleeting moment between the execution of the lease and the sublease was completely extinguished when the county signed the sublease. Although there is a provision in the sublease that gives the county the right to obtain possession should ERH default on the sublease, that right to possession, along with all other rights the county might have exercised under the sublease, was assigned to the trustee by execution of the assignment agreement between the county and the trustee.

Lastly, ERH did not use public funds in its renovation and construction projects. The funds used originated with the underwriter who purchased the bonds. This money was paid directly to the trustee at closing; the county neither held nor controlled the funds at any time. The bonds are not backed by the full faith and credit of the county because R.C. Chapter 140 bonds are not general obligations, debt, or bonded indebtedness of the county. (See R.C. 140.06[C].) The county has no right to levy taxes to pay debt service on the bonds, has assumed no risk, and would suffer no loss upon default. (See R.C. 140.06[C].) The debt service on the bonds is payable solely from the rental payments owed by ERH. In the guaranty agreement, ERH unconditionally guarantees to the trustee that it will make full and prompt payment of debt service on the bonds.

R.C. Chapter 140 financings provide a mechanism whereby public and nonprofit hospital agencies can construct and upgrade their facilities with tax-exempt obligations, thus lowering their construction costs. The purpose of issuing R.C. Chapter 140 obligations is to " * * * better * * * [provide] for the health and welfare of the people of the state by enhancing the availability, efficiency, and economy of hospital facilities and the services rendered thereby * * *." R.C. 140.02. Allowing public and nonprofit hospital agencies to lower their construction costs through the use of tax-exempt financings and then insisting that they pay prevailing wages on their construction projects works at cross-purposes. Therefore, we hold that construction projects financed with R.C. Chapter 140 bonds are not "public improvements" as defined in R.C. 4115.03(C), and are therefore not subject to the prevailing wage law.

Our decision is supported by application of the doctrine of *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another). The General Assembly has acted twice in recent years to expand the types of projects financed with bond issues that are covered by the prevailing wage laws. In 1975, the General Assembly adopted Am.Sub.S.B. No. 104 (136 Ohio Laws, Part I, 249) and specifically added provisions to various bond financing statutes to require that prevailing wages be paid on projects financed with such revenue bonds. However, R.C. Chapter 140, which was enacted in 1971, has never been amended to require that prevailing wages be paid on projects financed with hospital revenue bonds.

The several sections amended or enacted by Am.Sub.S.B. No. 104 have financing mechanisms that are similar to R.C. Chapter 140 hospital revenue bonds. See, for example, R.C. 165.02. They involve public authorities as issuers and private entities as beneficiaries of the project improvements. All set forth the public purposes which the particular bond financing statute is designed to serve.

Further support for our position is found by the General Assembly's failure to include R.C. Chapter 140 hospital revenue bond financings when it expanded the definition of public improvements and brought various kinds of bond issues within the ambit of the prevailing wage law. See R.C. 4115.032, enacted in 1980 by Am.Sub.H.B. No. 584 (138 Ohio Laws, Part II, 3093). Since the General Assembly specifically mentioned other Revised Code sections and failed to include R.C. Chapter 140 in its prevailing wage requirement, we apply the doctrine of *expressio unius est exclusio alterius*, and hold that the General Assembly did not intend for the prevailing wage statutes to apply to R.C. Chapter 140 financings.

Finally, R.C. 140.051 specifically states that " * * * [a]ny requirement of competitive bidding, other restriction, or other procedures that are imposed on

a public hospital agency with respect to contracts is not applicable to any contract entered into pursuant to this section." This language clearly contemplates an exemption from statutory restrictions and procedures that are imposed upon public hospital agencies, including the restrictions imposed by the prevailing wage law.

For the foregoing reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

HOLMES, WRIGHT and RESNICK, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., dissent.

DOUGLAS, J., dissenting. I respectfully dissent from the judgment of the majority. I do so because I do not agree with the majority in its interpretation of the law and because I fear that the ramifications of the majority decision will far exceed the purpose intended by the majority.

R.C. 4115.03 *et seq.* is a comprehensive formulation by the General Assembly designed to protect private sector collective bargaining agreements in the construction trades. Known as the Ohio prevailing wage law, the law was enacted to foster and encourage collective bargaining and thereby bring about orderly and peaceful resolution of disputes involving wages to be paid construction tradesmen. " * * * Above all else, the primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector." *State, ex rel. Evans, v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 147, 431 N.E.2d 311, 313. Today's decision seriously weakens this concept and serves to defeat both the admirable expressed intent of the General Assembly and the law on the subject as it has been written and developed.

This case is really not very complicated. Appellee is a not-for-profit religious corporation. Appellee owns and operates retirement and nursing facilities for aged persons. Two of these facilities are St. Luke Center, located in Cincinnati, and Whetstone Convalescent Center, located in Columbus. Appellee desired to renovate these facilities. In order to secure the necessary capital to complete the projects, appellee sought to have issued $21 million of hospital revenue bonds pursuant to the authority found in R.C. Chapter 140. In order to obtain the more favorable interest rate that such revenue bonds would provide, the bonds had to be issued through and in cooperation with a "public hospital agency," as defined in R.C. 140.01(B). This definition includes, as an entity, the county of Hamilton, Ohio.

To accomplish its purposes (and to comply with the law), appellee had to lease the facilities in question to a public hospital agency (Hamilton County). This provided the right, coupled with an interest, for Hamilton County to participate in the transaction. Accordingly, appellee leased the facilities to the county which, immediately thereafter, subleased the properties back to appellee. This procedure qualified the transaction for R.C. Chapter 140 hospital revenue bond treatment.

Recognizing that this "use" of a public entity implicitly (if not explicitly) smelled like, walked like and quacked like an improvement for the public, the Director of the Ohio Department of Industrial Relations notified appellee that the renovation and construction projects were subject to the prevailing wage law. Appellee did not concur and commenced this action seeking a ruling that the projects were not construction subject to the prevailing wage law. The trial court and the court of appeals agreed with appellee. The majority, herein, affirms the judgment of the court of appeals, and since I believe that the majority is in error, I dissent.

The argument is made by the appellee and the majority that the transaction between appellee and Hamilton County is not, as required by R.C. 4115.03(C), construction "pursuant to a contract with a public authority" nor is it construction "for a public authority." To support its position, the majority argues that neither of the lease documents " * * * sets forth the plans and specifications necessary for construction * * *," and that for the construction to be for a public authority, the public authority must receive benefit from the construction " * * * either through maintaining a possessory or property interest in the completed project * * *." Thus, argues the majority, neither of these conditions found in R.C. 4115.03(C) has been met.

The majority is in error. R.C. 4115.03(C) does *not* contain either of the requirements set forth by the majority. To arrive at the result reached by the majority, one needs to read into and considerably expand the language of the statute. Rather than doing so for the purpose of seeking a way to avoid the prevailing wage law, it is our obligation to construe the statute liberally in favor of its intended purpose, since the provisions of R.C. Chapter 4115 are remedial in nature and remedial laws are required to be liberally construed.

Further, in providing this favorable method of financing, the General Assembly has (as it often does *not* do) set forth its purpose in enacting the legislation. R.C. 140.02 provides, in pertinent part, that "[t]he authorizations granted in this chapter * * * are granted for the *public purpose* of better providing for the health and welfare of the people of the state by enhancing the availability, efficiency, and economy of hospital facilities and the services rendered thereby * * *." (Emphasis added.) I would think that a fair

reading of this clear purpose clause would lead even the casual reader to the conclusion that the General Assembly devised this financing scheme to further a public purpose and that the public does receive the benefit of the construction.

To accept the position of the majority invites mischief. Henceforth, it would seem, any public authority desiring to avoid its responsibilities under the prevailing wage law need only contract with a straw man to see to it that a public facility is erected. It would then be up to the straw man to enter into a contract for the actual construction of the facility. Because, according to the majority, the public authority did not enter into a contract *for* the actual construction, the project would be exempt from the prevailing wage law. The possibilities are endless and opening wide this door would tend to eviscerate the legislative intent—a proposal we recently rejected in *Harris v. Van Hoose* (1990), 49 Ohio St.3d 24, 550 N.E.2d 461.

Finally, it is obvious that without the help and intervention of Hamilton County, there would have been no R.C. Chapter 140 bond financing for appellee's benefit. The active participation of some public entity was necessary. An analogy can be drawn in this case to *State, ex rel. Fostoria Daily Review Co., v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313, wherein we thwarted an attempt by a public entity to avoid public accountability through a contract with a private, not-for-profit corporation. In *Fostoria,* we ordered disclosure of hospital records as public records even though the operation of the hospital had been turned over by the public entity to a private not-for-profit corporation.

Our decision here should be no different. The renovation and construction projects of appellee are a result of an arrangement (a contract) with a public entity and authority. The fact that appellee is a private not-for-profit corporation does not alter the public nature of the construction activity and/or the entities involved.

This court should hold that any and all R.C. Chapter 140 bond-financed construction is subject to the requirements of Ohio's prevailing wage law. Since the majority does not do so, I respectfully dissent.

SWEENEY and H. BROWN, JJ., concur in the foregoing dissenting opinion.