[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 210.]

U.S. CORRECTIONS CORPORATION ET AL., APPELLEES, v. OHIO DEPARTMENT OF INDUSTRIAL RELATIONS ET AL., APPELLANTS.

[Cite as *U.S. Corrections Corp. v. Ohio Dept. Indus. Relations*, 1995-Ohio-102.]

*Public contracts—Public improvements—Agreement for lease of correctional facilities must comply with R.C. 307.022, including the requirements of competitive bidding and prevailing wage laws.*

————————————

An agreement entered into pursuant to R.C. 307.022 for the lease of correctional facilities must require that either the lessor or lessee contract for the construction, improvement, furnishing, and equipping of the facility in accordance with all the requirements of R.C. 307.022, including the requirements of the competitive bidding and prevailing wage laws. (R.C. 307.022[A], construed and applied.)

————————————

(No. 94-1290—Submitted June 6, 1995—Decided August 16, 1995.)

APPEALS from the Court of Appeals for Hamilton County, Nos. C-920814 and C-920820.

————————————

{¶ 1} Appellee United States Corrections Corporation ("USCC") is a private enterprise engaged in the business of leasing correctional facilities to political subdivisions. In the spring or summer of 1990, USCC began discussions with Hamilton County officials regarding the county's need for additional jail space. In July 1990, USCC presented a proposal to the Hamilton County Commissioners to provide the county with a new jail facility. In July or August 1990, USCC purchased, with its own funds, the old Kruse Hardware Building in Cincinnati.

**{¶ 2}** On March 29, April 5, and April 12, 1991, the Hamilton County Board of County Commissioners, the second appellee, published a notice in a newspaper of general circulation in the county. The notice provided, in part:

"The Board of County Commissioners of Hamilton County, Ohio, pursuant to the authority of Section 307.022 of the Ohio Revised Code, proposes to enter into a lease for correction facilities to be used by the County. Hamilton County is seeking leased space suitable for housing 200 to 800 minimum security prisoners. The facility must comply with proper zoning, building permit and licensing requirements and may be operated privately or publicly. The lease shall be for a period of at least three years and proposals will be accepted for a term of reasonable length up to twenty years. The facility should be located in Hamilton County within reasonable access to the Hamilton County Court House and Justice Center and on or near public transportation. All proposals for such leases shall be submitted on or before April 19, 1991 * * *. The timing of the submittal is critical. The County is seeking to have such facilities available by July 1, 1991 at the latest. * * * Pursuant to section 307.022 O.R.C., the County is not required to follow the competitive bidding requirements of 307.86 of the Code in connection with entering into such leases for correctional facilities."

**{¶ 3}** On April 19, 1991, USCC responded to the notice by submitting a proposal to lease the Kruse Hardware Building to the county for use as a correctional facility. No other proposals were received by the county. On May 1, 1991, the board of commissioners passed a resolution approving a "Lease and Correctional Housing Services Agreement" between the county and USCC. The lease agreement provided that USCC was to renovate the Kruse Hardware Building to make the facility available for use as a minimum security correctional institution.[1] The terms of the lease required USCC to complete the renovations in

---

1. The description of the "Institution" to be leased to the county provided that:

accordance with a timetable set forth in Article VIII of the agreement.[2]  Rental

payments were to be made in accordance with Article XV of the agreement.[3]  Under

the terms of the contract, the county agreed to lease the facility for an initial term

"The Institution is located on the corner of Sixth and Linn Streets in the Queensgate area of downtown Cincinnati.

"The Institution owned by U.S. Corrections Corporation, incorporates a 3 acre site, * * * easily accessible to the Hamilton County Justice Center and to the major highways and thoroughfares in and around the City of Cincinnati.

"The Institution consists of a 135,000 square foot complex of buildings which can provide more than adequate areas for all housing, program, service and administrative needs required for the successful operation of an 800 prisoner, minimum security, correctional facility by the County.

"* * *

"U.S. Corrections Corporation will renovate the Institution into a 800 bed, minimum security, correctional facility in accordance with all local, state and national building codes and in close adherence to the Minimum Standards for Jails in Ohio. The lower floors will be renovated for use as service and program areas for the inmate population. These areas will include a kitchen, dining room, indoor recreation areas, visitation space, classrooms, library, counseling rooms, staff training and locker [rooms] and an inmate admission area. The third through eighth floors will be used for inmate housing. These housing floors will contain large dormitories providing sleeping quarters, shower, toilet and laundry areas, security stations and recreation areas. All floors will be renovated so as to allow close supervision by trained security personnel on a 24 hour basis each day. The facility will be designed so as to provide for strict security procedures implemented for careful screening of all persons entering and [exiting] the facility.

"U.S.C.C. will also provide an initial outlay of facility furnishings including beds, mattresses and pillows for 800 Inmates, lockers and partial room partitions for up to 800 inmates, along with tables and chairs in the Dining Area sufficient to feed 225 Inmates at each sitting."

2. Article VIII of the lease agreement provided that:

"Upon contract signature and issuance of required building permits, U.S.C.C. shall use its best efforts to provide correctional housing for Inmates from the County on the following schedule:

"Housing for 200 Inmates within 90 days ('Initial Occupancy');

"Housing for 400 Inmates within 120 days;

"Housing for 600 Inmates within 150 days;

"Housing for 800 Inmates within 180 days ('Final Occupancy')[.]

"The facility is now and has been for at least six (6) months prior to the date hereof suitable for use and occupancy as a manufacturing/warehouse facility.  U.S.C.C. will perform renovations necessary to suit the facility for use as the Institution per the above timetable."

3. Article XV of the lease agreement provided:

"The County shall pay U.S.C.C. as rent for the use of the Institution, as follows:

"A.  Commencing with the first full month after U.S.C.C. has made available to the County beds for 800 Inmates (the 'First Fully-Available Month'), the County shall pay as rent * * *($170, 333.34) per month.

"B.  Prior to the First Fully-Available Month, the County shall pay to U.S.C.C. Seven Dollars and Ten Cents ($7.10) per bed per day for each bed made available to the County on each day in that month, assuming a thirty day month. * * *"

of three years and ninety days, with an option to renew the lease for two additional periods of one year each.

{¶ 4} After the lease agreement had been executed, USCC began renovating the old Kruse Hardware Building to make it suitable for use as a minimum security prison. USCC directly contracted and paid for the improvement, furnishing, and equipping of the building to meet the terms of the lease agreement.

{¶ 5} During the renovation project, the Ohio Department of Industrial Relations ("ODIR"), appellant, notified the county that the work being performed on the project was subject to the requirements of Ohio's prevailing wage law. Additionally, appellant Jerry Monahan, a taxpayer, requested that the Hamilton County Prosecuting Attorney apply to a court, pursuant to R.C. 309.12, to enjoin the county from paying any funds to USCC under the lease agreement. In a letter to the prosecuting attorney, Monahan alleged that the agreement between the county and USCC had been entered into in violation of the competitive bidding requirements of R.C. 307.86. Monahan also asserted that the county had violated the requirements of R.C. 307.022(A)(1) for publication of the requests for proposals. Additionally, Monahan suggested that the lease agreement violated R.C. 307.022(A) because it did not require the county to contract, in accordance with the requirements of the competitive bidding and prevailing wage laws, for the construction, improvement, furnishing, and equipping of the facility to be leased.

{¶ 6} On October 21, 1991, USCC and the board of commissioners (collectively, "appellees") filed a declaratory judgment action in the Court of Common Pleas for Hamilton County, naming, as defendants, Monahan, ODIR, and the Director of ODIR, John P. Stozich (collectively, "appellants"). In the complaint, appellees sought a determination that the lease agreement between USCC and the county was valid and enforceable, that the board of commissioners had complied with the publication requirements of R.C. 307.022(A)(1), and that the Kruse renovation project was not a "public improvement" subject to the prevailing

wage law. Accordingly, appellees sought to enjoin ODIR and Stozich from seeking to compel USCC to comply with the prevailing wage law on the Kruse renovation project. Appellees also sought to enjoin Monahan from initiating litigation (i.e., an R.C. 309.13 taxpayer's action) that could interfere with completion of the project. Monahan answered the complaint and asserted counterclaims against appellees. In a counterclaim against the board of commissioners, Monahan attempted to commence an R.C. 309.13 taxpayer's action, asserting that the lease agreement did not comply with laws relating to competitive bidding.

{¶ 7} The case was eventually submitted to the court on cross-motions for summary judgment. The trial court granted appellees' joint motion for summary judgment, denied ODIR's and Monahan's motions, and dismissed Monahan's counterclaims. The trial court's decision contained findings of fact that were stated separately from the court's conclusions of law.

{¶ 8} Monahan, ODIR, and Stozich appealed to the court of appeals. The court of appeals, in a split decision, reversed the judgment of the trial court and remanded the cause for further proceedings. The court of appeals' majority did not address the merits of the appeals but, rather, determined that the trial court had impermissibly weighed the evidence on summary judgment.

{¶ 9} The cause is now before this court pursuant to the allowance of discretionary appeals.

_____

*Taft, Stettinius & Hollister, Robert G. Stachler* and *Mark G. Kobasuk*, for appellee USCC.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *James W. Harper*, Assistant Prosecuting Attorney, for appellee board of commissioners.

*Betty D. Montgomery*, Ohio Attorney General, *Dan E. Bellville* and *Katherine A. Francis*, Assistant Attorneys General, for appellants ODIR and Stozich.

*Kircher, Robinson, Cook, Newman & Welch* and *Thomas J. Kircher*, for appellant Monahan.

*Benesch, Friedlander, Coplan & Aronoff, N. Victor Goodman* and *Mark D. Tucker*, urging reversal for amicus curiae, Ohio State Building and Construction Trades Council.

————————————

**DOUGLAS, J.**

{¶ 10} The court of appeals' majority reversed the judgment of the trial court, finding that the existence of genuine issues of material fact precluded summary disposition of the case. We agree that the trial court erred in granting summary judgment in favor of appellees, but for different reasons than stated by the court of appeals' majority. Specifically, we find that summary disposition of this case was proper, but that the trial court entered judgment in favor of the wrong parties. We also find that the court of appeals' majority compounded the error by failing to address the merits of appellants' appeals. Therefore, for the reasons that follow, we reverse the judgment of the court of appeals, vacate the judgment of the trial court, and enter final judgment in favor of appellants.

I

{¶ 11} This case involves two separate appeals from the judgment of the court of appeals—Monahan's appeal on the one hand and ODIR and Stozich's appeal on the other hand.[4] At the heart of these appeals is the question whether the work performed on the Kruse renovation project was subject to Ohio's competitive bidding and prevailing wage laws. The lease agreement between USCC and the

————————————

4. We are aware, of course, of the unique procedural posture of this case. Monahan, ODIR and Stozich (appellants) seemingly prevailed in the court of appeals since the appellate court reversed the judgment of the trial court. However, appellants raised issues in the court of appeals which, if accepted, would have entitled them to final judgment. The court of appeals never addressed these issues. Therefore, it is perfectly proper that appellants now seek a determination on the merits of their appeals.

6

county required neither competitive bidding nor payment of the prevailing wage for the work performed on the Kruse renovation project. ODIR and Stozich's appeal focuses on issues concerning the prevailing wage law. Monahan's appeal deals with issues concerning competitive bidding and the notice requirements of R.C. 307.022(A).

II

Monahan's Appeal

{¶ 12} The lease agreement between USCC and the county was entered into pursuant to R.C. 307.022.[5] R.C. 307.022 permits a board of county commissioners to enter into a lease of correctional facilities without competitive bidding. R.C. 307.022(A)(1) requires that before entering into the lease, the board of county commissioners must publish a notice that the board is accepting proposals for an R.C. 307.022(A)(1) lease of correctional facilities. R.C. 307.022(A) requires that a lease entered into under R.C. 307.022(A)(1) "shall require the county to contract," in accordance with competitive bidding laws (R.C. 307.86 to 307.92) and the

---

5. R.C. 307.022 provides that:

"(A) The board of county commissioners of any county may do both of the following without following the competitive bidding requirements of section 307.86 of the Revised Code:

"(1) Enter into a lease, including a lease with an option to purchase, of correctional facilities for a term not in excess of forty years. Before entering into the lease, the board shall publish, once a week for three consecutive weeks in a newspaper of general circulation in the county, a notice that the board is accepting proposals for a lease pursuant to this division. The notice shall state the date before which the proposals are required to be submitted in order to be considered by the board.

"(2) Subject to compliance with this section, grant leases, easements, and licenses with respect to, or sell, real property owned by the county if the real property is to be leased back by the county for use as correctional facilities.

"The lease under division (A)(1) of this section shall require the county to contract, in accordance with Chapter 153., sections 307.86 to 307.92 [competitive bidding laws], and Chapter 4115. [ the prevailing wage law] of the Revised Code, for the construction, improvement, furnishing, and equipping of correctional facilities to be leased pursuant to this section. * * *

"* * *

"(C) As used in this section:

"* * *

"(2) 'Construction' has the same meaning as in division (B) of section 4115.03 of the Revised Code."

prevailing wage law (R.C. 4115.03 *et seq.*), for the construction, improvement, furnishing, and equipping of correctional facilities to be leased.

{¶ 13} Monahan first suggests that the legal notice published by the board of commissioners violated R.C. 307.022(A)(1). However, we find that the notice published by the board of commissioners satisfied the requirements of R.C. 307.022(A)(1). Therefore, we reject Monahan's contentions.

{¶ 14} Next, Monahan argues that the lease agreement between USCC and the county violated R.C. 307.022(A) because the lease did not require the county to contract, in accordance with competitive bidding laws, for the work performed on the Kruse renovation project. We agree that the lease failed to comply with the requirements of R.C. 307.022(A).

{¶ 15} R.C. 307.022(A) requires that where, as here, a county enters into a lease agreement for correctional facilities pursuant to R.C. 307.022, the lease "shall require the county to contract," in accordance with competitive bidding and prevailing wage laws, for the construction, improvement, furnishing, and equipping of facilities to be leased. The lease between USCC and the county contained no requirement that the renovation of the Kruse Hardware Building be subject to the requirements of Ohio's competitive bidding and prevailing wage laws. Thus, the lease violated the provisions of R.C. 307.022(A).

{¶ 16} Nevertheless, appellees contend, and the trial court held, that R.C. 307.022(A) requires competitive bidding and payment of the prevailing wage only when the *county performs* any "construction, improvement, furnishing, and equipping" of the leased correctional facilities. Here, *USCC* directly contracted for the work performed on the Kruse renovation project. Thus, appellees contend that R.C. 307.022(A) is inapplicable. However, we find that the requirements of R.C. 307.022 are clearly applicable in the case at bar.

{¶ 17} Again, R.C. 307.022(A) provides that a lease entered into pursuant to R.C. 307.022 "shall require the county to contract" in accordance with

competitive bidding and prevailing wage laws for the construction, improvement, furnishing, and equipping of the facility to be leased. R.C. 307.022(A) does *not* require that the county directly contract for the construction. Thus, we interpret R.C. 307.022(A) as requiring a provision in the lease that whoever does the contracting for the construction, improvement, furnishing, and equipping of the facility to be leased must do so in accordance with competitive bidding and prevailing wage laws. In this regard, we agree with the observations of Judge Marianna Brown Bettman in her dissenting opinion in the court of appeals:

"The language of R.C. 307.022 says that 'the lease shall require the county to contract' in accordance with competitive-bidding and prevailing wage laws for the construction of the correctional facility to be leased under this statute. The language is mandatory and it does not, as the trial court found, require the county to be doing the constructing. It bears noting that a lease is a contract. I read the statute to require a provision in the lease itself stating that whoever does the contracting must comply with these laws. The trial court erred as a matter of law in holding otherwise."

{¶ 18} Additionally, if we were to accept appellees' contentions, a county would be able to avoid its obligations under R.C. 307.022(A) simply by having a private enterprise directly contract for the construction, improvement, furnishing, and equipping of the facility to be leased. In our judgment, such a result would eviscerate R.C. 307.022(A).

{¶ 19} Accordingly, we hold that an agreement entered into pursuant to R.C. 307.022 for the lease of correctional facilities must require that either the lessor or lessee contract for the construction, improvement, furnishing, and equipping of the facility in accordance with all the requirements of R.C. 307.022, including the requirements of the competitive bidding and prevailing wage laws.

{¶ 20} Appellees protest that the renovation of the Kruse Hardware Building was a privately funded project paid for by USCC, and that the lease was

a turnkey lease providing that the lessee would take possession of a completely renovated facility. Therefore, appellees urge that the renovation project was not subject to competitive bidding and prevailing wage requirements. However, we are not persuaded that either of these matters affected the responsibility of the parties to observe the requirements of competitive bidding and the prevailing wage law for the work performed on the Kruse renovation project.

{¶ 21} Monahan also contends that the trial court erred in dismissing his counterclaim against the board of commissioners, wherein he attempted to initiate an R.C. 309.13 taxpayer's action to enjoin the county from honoring the terms of the lease agreement. The trial court found that Monahan was not entitled to maintain a taxpayer's action and that, therefore, he was not entitled to an award of attorney fees. However, we find that Monahan has met the jurisdictional and procedural prerequisites for maintaining an R.C. 309.13 taxpayer's action. Prior to the commencement of this litigation, Monahan requested, in writing, that the Hamilton County Prosecuting Attorney apply to a court, pursuant to R.C. 309.12, to enjoin the county from paying any funds to USCC under the lease agreement. The prosecuting attorney never made such an application or otherwise initiated a civil action contemplated by R.C. 309.12. Rather, the prosecutor, representing the board of commissioners, joined forces with counsel for USCC and commenced the present litigation, naming Monahan as a party-defendant, and seeking to preclude Monahan from initiating litigation concerning the validity of the lease agreement. Under these circumstances, we find that Monahan was clearly entitled to initiate an R.C. 309.13 taxpayer's action in his counterclaim against the board of commissioners.

### III

### ODIR and Stozich's Appeal

{¶ 22} ODIR and Stozich contend that the county, in entering into the lease agreement with USCC, violated its obligation under R.C. 307.022(A) to contract,

in accordance with the requirements of the prevailing wage law, for the construction, improvement, furnishing, and equipping of the facility to be leased. ODIR and Stozich suggest that the county's obligation under R.C. 307.022(A) "would have been met by including a notice provision and attaching a list of applicable prevailing wage rates to the lease contract." For the reasons stated in our discussion in Part II, *supra*, we agree that the county violated its obligations under R.C. 307.022(A). We also agree that the requirements of the statute could have been satisfied had the lease contained a provision to ensure that the construction, improvement, furnishing, and equipping of the facility be accomplished in accordance with the competitive bidding and prevailing wage laws.

{¶ 23} ODIR and Stozich also contend that, in addition to the requirements of R.C. 307.022, the obligation to pay prevailing wage rates for the work performed on the Kruse renovation project was triggered by the general provisions of R.C. Chapter 4115. Specifically, ODIR and Stozich maintain that the Kruse renovation project was a "public improvement" to which Ohio's prevailing wage law applies. R.C. 4115.03(C)[6] defines "public improvement" as follows:

"'Public improvement' includes all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof. When a public authority rents or leases a newly constructed structure within six months after completion of such structure, all work performed on such structure to suit it for occupancy by a public authority is a 'public improvement.' * * *"

---

6. Although a former version of R.C. 4115.03(C) applies in this case (137 Ohio Laws, Part II, 3851-3852), we consider the current version of the statute, since the changes in the law do not affect the issues in these appeals.

**{¶ 24}** Ohio's prevailing wage law applies to all construction projects that are "public improvements." R.C. 4115.03(C) defines "public improvement" in two separate ways. The first sentence of R.C. 4115.03(C) defines a "public improvement" as one that is constructed by a public authority or pursuant to a contract with a public authority. The second sentence of R.C. 4115.03(C) provides that where a public authority rents or leases a "newly constructed structure" within six months after construction is completed, the structure is a "public improvement." The trial court held that neither of these two alternative definitions of "public improvement" applied to the Kruse renovation project.

**{¶ 25}** We find that the renovation of the old Kruse Hardware Building fits squarely within the definition of "public improvement" as that term is defined in the first sentence of R.C. 4115.03(C). In *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137, a majority of this court interpreted the first sentence of R.C. 4115.03(C) as requiring that "a project must be constructed 'pursuant to a contract with a public authority' and 'for a public authority' in order for the prevailing wage statutes to apply." The majority in *Episcopal Homes* held that where a lease between a county and a private entity is not the "animating force" for a construction and renovation project, the project is not being constructed "pursuant to a contract with a public authority." *Id.* Further, the majority in *Episcopal Homes* determined that construction of a project "for a public authority" necessitates that "the public authority receive the benefit of the construction, either through maintaining a possessory or property interest in the completed project or through the use of public funds in the construction of the project." *Id.* at 370, 575 N.E.2d at 137.

**{¶ 26}** Here, the lease between the county and USCC was the "animating force" behind the renovation of the old Kruse Hardware Building. The terms of the lease contemplated that USCC would renovate the building to make it suitable for the county to use as a correctional facility. USCC renovated the building to meet

the terms of the lease agreement. The agreement outlined a number of specifications for the correctional facility, including the requirement that the facility comply with applicable mandates governing minimum security jails. The terms of the lease set forth a timetable for completion of the renovations and a schedule for occupancy by the county. Therefore, we find that the correctional facilities leased by the county were constructed "pursuant to a contract with a public authority."  Moreover, there is no dispute that the county has a possessory interest in the completed facility -- a right to occupancy for a period of years with two one-year options to renew the lease. Thus, we also find that the correctional facilities leased by the county were constructed "for a public authority." Hence, the Kruse renovation project was a "public improvement" under the test applied by this court in *Episcopal Homes*.

{¶ 27} We next consider whether the renovation of the Kruse Hardware Building was a "public improvement" as that term is defined in the second sentence of R.C. 4115.03(C). The second sentence of R.C. 4115.03(C) provides that when a public authority *rents or leases a newly constructed structure within six months after completion of the structure*, all work performed on the structure to suit it for occupancy by a public authority is a "public improvement."

{¶ 28} Appellees contend that the definition of "public improvement" set forth in the second sentence of R.C. 4115.03(C) is inapplicable because the lease agreement between USCC and the county was executed approximately thirteen months before the completion of construction.[7] Thus, appellees urge that the county did not lease or rent the facility within six months after completion of construction as required by R.C. 4115.03(C). However, it is undisputed that the county was to lease the old Kruse Hardware Building *within six months after* completion of the renovation project.  Therefore, we find that the requirement in the second sentence

---

7. The lease agreement was executed on May 1, 1991. The construction was apparently not completed until approximately June 1992, at which time the county took occupancy of the completed facility.

of R.C. 4115.03(C) that a newly constructed structure be leased or rented by a public authority within six months after the completion of construction has been satisfied in the case at bar.

{¶ 29} Further, appellees contend that the correctional facility leased by the county was not a "newly constructed structure" within the meaning of R.C. 4115.03(C). In this regard, appellees suggest that "newly constructed structure" means a brand new structure -- not a newly renovated structure. However, appellees' arguments cannot be reconciled with the definition of "construction" that applies in the case at bar. Specifically, former R.C. 4115.03(B) defined "construction" as "any construction, reconstruction, improvement, enlargement, alteration, repair, painting, or decorating, of any public improvement the total overall project cost of which is fairly estimated to be more than four thousand dollars * * *." 137 Ohio Laws, Part II, 3851. Therefore, the term "constructed" in the phrase "newly constructed structure" included any newly reconstructed structure. The transformation of the Kruse Hardware Building into a completed correctional facility clearly constituted a "newly constructed structure" within the meaning of R.C. 4115.03(C).

{¶ 30} Accordingly, we find that the Kruse renovation project was a "public improvement" within the meaning of the first *and* second sentences of R.C. 4115.03(C) and, thus, the Kruse renovation project was subject to the requirements of the prevailing wage law for this reason as well as the reason that appellees failed to adhere to the specific provisions of R.C. 307.022. The trial court erred in holding otherwise.

IV

Remedies

{¶ 31} Having considered the merits of these appeals, we must now face the difficult task of fashioning a remedy for appellants. The parties have provided us with no help in this regard. Monahan has suggested no specific remedy for the

violations of R.C. 307.022(A). ODIR and Stozich have requested that we simply "reverse the lower courts' decisions, and grant Defendants-Appellants' Motion for Summary Judgment." In their motion for summary judgment in the trial court, ODIR and Stozich sought a determination that USCC and the county were liable for such amounts as should have been paid as prevailing wages on the Kruse renovation project. Further, ODIR and Stozich had requested that USCC and the county be ordered to retain all pay records for the work performed on the project. However, there is no indication that any pay records for the work performed on the Kruse renovation project currently exist, and it is entirely unclear how the prevailing wage could now be calculated and paid for the work performed on a public improvement project that was completed several years ago.

{¶ 32} In fashioning a remedy for Monahan, we find that Monahan was clearly entitled to maintain a taxpayer's action in his counterclaim against the board of commissioners and that, therefore, he is entitled to an award of his costs in this litigation, including reasonable attorney fees. See R.C. 309.13. We find that appellees were obligated to follow the requirements of the competitive bidding laws for the work performed on the Kruse renovation project. However, we have no means of requiring competitive bidding on a project that has long since been completed. Further, we issue no ruling that would in any way prohibit the county from making rental payments under the terms of the lease with USCC.[8]

---

8. The only remedy Monahan requested from the trial court was set forth in his motion for summary judgment. Therein, Monahan requested that the trial court enter the following findings:

"a. This court [the trial court] declares the Lease between the County and U.S.C.C. invalid and void;

"b. This Court declares that competitive bidding was required pursuant to {307.022(A)(2);

"c. This court declares that the Board failed to comply with {307.022(A)(1) with respect to publication;

"d. This Court denies the Plaintiffs' requests for a Declaratory Judgment and Injunction;

"e. This Court grants Defendant taxpayers attorney fees and costs.

"f. This Court finds that permanent injunction would lie here in the circumstances of this case and as a remedy for taxpayer Monahan. *However, in recognition of the crisis existing for additional jail space in Hamilton County, Defendant Monahan in his commitment to this community*

**{¶ 33}** With respect to ODIR and Stozich's appeal, we determine that the prevailing wage law applied to the Kruse renovation project pursuant to R.C. 307.022 and, in addition, pursuant to the general provisions of Ohio's prevailing wage law. However, while the prevailing wage should have been paid on the Kruse renovation project, we decline to order payment at this late date.

**{¶ 34}** While these might appear to be empty victories for ODIR, its director, and Monahan, we hasten to add that our decision provides a basis for ODIR and its director to strictly enforce the prevailing wage law in all future cases involving an R.C. 307.022 lease agreement like the one at issue herein and that such leases covering construction must contain a provision whereby the construction is subject to competitive bidding.

V

Conclusion

**{¶ 35}** For the foregoing reasons, we reverse the judgment of the court of appeals, vacate the judgment of the trial court, enter final judgment in favor of appellants, grant relief as outlined *supra*, and, specifically, we order the board of commissioners to pay and/or reimburse Monahan for all of his costs and attorney fees incurred during the course of this litigation.

*Judgment reversed.*

---

*has waived the issuance of this remedy.* This Court will on this basis not impose such relief at this time." (Emphasis added.)

Section "a" of Monahan's request for relief clearly conflicted with section "f." A possible explanation for the conflict is that if the lease agreement was found to be "void," USCC would be entitled to immediate possession of the facility. If that occurred, the county would either have to find new accommodations for the prisoners housed in the facility, or would have to negotiate a new lease with USCC on USCC's terms. In either event, a declaration that the lease is "void" would place the county in an untenable situation. Recognizing this, Monahan, a concerned and conscientious member of the community, "waived" the issuance of such a remedy. Thus, the only affirmative relief Monahan requested was an award of costs and attorney fees, which we have awarded to him.

MOYER, C.J., WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

————————————