**ZURZ, Dir., et al., Appellants,**

v.

**770 WEST BROAD AGA, L.L.C., et al., Appellees.**

[Cite as *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–154.

Decided Feb. 24, 2011.

Michael DeWine, Attorney General, and Lindsay M. Sestile and Aaron W. Johnston, Assistant Attorneys General, for appellants.

Thompson Hine L.L.P., Michael W. Currie, and Gabe J. Roehrenbeck; and Kooperman Law Offices, L.L.C., and Brian T. Kooperman, for appellees.

FRENCH, Judge.

{¶ 1} Plaintiffs-appellants, the Ohio Department of Commerce and its director, Kimberly Zurz (collectively, "DOC"), appeal from the Franklin County Court of Common Pleas' entry of summary judgment in favor of defendants-appellees, 770 West Broad AGA, L.L.C. ("AGA"), Leed Construction, Ltd., Anchor Realty Construction, Inc., Jason Gunsorek, and Megan Gunsorek Burkholder (collectively, "appellees"), on DOC's claim for violations of Ohio's prevailing-wage laws. We reverse.

{¶ 2} Effective January 15, 2008, AGA, an Ohio limited-liability company, and the state of Ohio, acting through the Department of Administrative Services ("DAS"), entered into a lease, pursuant to which AGA leased real property located at 770 West Broad Street, in Columbus ("the property"), to the state for use by the Department of Rehabilitation and Correction ("DRC"). Under the lease, AGA agreed to construct and pay for specified improvements to the property (the "project"). Section XI(C) of the lease required AGA to comply with *applicable* provisions of R.C. Chapter 4115 and Ohio Adm.Code 4101:9–4 relating to payment of prevailing wage. No public funds were spent on the project.

{¶ 3} DOC commenced this action against appellees in September 2009, alleging prevailing-wage violations, relating to the project. Appellees moved for summary judgment, arguing that Ohio's prevailing-wage law is facially unconstitutional and that, alternatively, prevailing-wage law did not apply to the project. The trial court refused to address appellees' constitutional challenge but granted

appellees' motion, concluding that prevailing-wage law was inapplicable because no public funds were spent on the project.

{¶ 4} DOC has filed a timely notice of appeal and asserts the following assignment of error:

The trial court erred in finding that improvements made to a property leased to the state of Ohio, to be occupied by a state agency, are not subject to prevailing wage law, R.C. 4115.03 et seq.

{¶ 5} We review a summary judgment de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. When an appellate court reviews a trial court's disposition of a summary-judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown* at 711.

{¶ 6} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, quoting *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615.

{¶ 7} The crux of this case is whether Ohio's prevailing wage law applies to the project. "Ohio's prevailing wage law applies to all construction projects that are 'public improvements,' as defined in R.C. 4115.03(C)." *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134; *U.S. Corr. Corp. v. Ohio Dept. of Indus. Relations* (1995), 73 Ohio St.3d 210, 218, 652 N.E.2d 766; see also *Northwestern Ohio Bldg. & Constr. Trades Council v. Ottawa Cty. Improvement Corp.*, 122 Ohio St.3d 283, 2009-Ohio-2957, 910 N.E.2d 1025, ¶ 15, citing *Episcopal Retirement Homes;* R.C.

4115.10(A) ("No person, firm, corporation, or public authority that constructs a public improvement with its own forces * * * shall violate the wage provisions of sections 4115.03 to 4115.16 of the Revised Code").

{¶ 8} Despite the Supreme Court of Ohio's clear statement of the law in *Episcopal Retirement Homes* and *U.S. Corr. Corp.*, the trial court held that "in order for Ohio's prevailing wage law to apply to a project, it must be a public improvement *and* it must be paid for with public funds." (Emphasis sic.) The trial court relied exclusively on the *Northwestern* syllabus to conclude that Ohio's prevailing-wage law did not apply, because no public funds were spent on the project. Before turning to *Northwestern,* however, we will first review the applicable statutory language and prior Supreme Court precedent regarding the applicability of prevailing-wage law.

{¶ 9} The trial court correctly acknowledged that prevailing-wage law applies only to a project that is a "public improvement." R.C. 4115.03(C) defines "public improvement," as follows:

"Public improvement" includes all buildings * * * and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof. When a public authority rents or leases a newly constructed structure within six months after completion of such construction, all work performed on such structure to suit it for occupancy by a public authority is a "public improvement."

On appeal, DOC contends that the project qualifies as a "public improvement" under both sentences of R.C. 4115.03(C), thereby mandating compliance with prevailing-wage law. More specifically, DOC contends that the project qualifies as a "public improvement" for two reasons: (1) it was completed pursuant to a contract with DRC for DRC's use and (2) DRC leased the structure within six months after work was performed to suit DRC.

{¶ 10} The Supreme Court of Ohio has provided guidance on applying the statutory definition of "public improvement" for purposes of determining the applicability of prevailing-wage law. See *Episcopal Retirement Homes,* 61 Ohio St.3d 366, 575 N.E.2d 134; *U.S. Corr. Corp.,* 73 Ohio St.3d 210, 652 N.E.2d 766. As applicable here, to satisfy the first sentence of R.C. 4115.03(C), the project must be constructed "pursuant to a contract with a public authority" and "for a public authority." See *Episcopal Retirement Homes* at 369. A project is constructed pursuant to a contract with a public authority when the contract is the "animating force" for the construction. Id. To be constructed for a public authority, "the public authority [must] receive the benefit of the construction, either through maintaining a possessory or property interest in the completed

project or through the use of public funds in the construction of the project." Id. at 370.

{¶ 11} The Supreme Court applied the statutory definition of "public improvement" in *U.S. Corr. Corp.* There, United States Corrections Corporation ("USCC"), a private company, entered into a Lease and Correctional Housing Services Agreement (the "agreement") with Hamilton County, Ohio. The agreement provided that USCC would renovate the Kruse Hardware Building in Cincinnati for use as a minimum-security correctional institution and would lease the completed facility to the county for a specified term. USCC directly contracted and paid for renovations to meet the terms of the agreement. The Supreme Court ultimately concluded that the renovations fit within both definitions of "public improvement" in R.C. 4115.03(C) and were, therefore, subject to Ohio's prevailing-wage requirements.

{¶ 12} The Supreme Court first applied the test utilized in *Episcopal Retirement Homes,* 61 Ohio St.3d 366, 575 N.E.2d 134. The court determined, 73 Ohio St.3d at 219, 652 N.E.2d 766, that the agreement was the "animating force" behind the renovation because USCC renovated the building to comply with the agreement's terms, which outlined specifications for the renovation, a timeline for completion, and a schedule of occupancy. Accordingly, the court concluded that the renovated facility was constructed pursuant to a contract with a public authority. The court further determined that the county's possessory interest in the completed facility, pursuant to the terms of the agreement, indicated that the correctional facility was constructed for a public authority. Thus, the court concluded that the renovation project fit squarely within the definition of "public improvement" in the first sentence of R.C. 4115.03(C).

{¶ 13} The Supreme Court then considered whether the renovation also satisfied the second sentence of R.C. 4115.03(C), which provides that when a public authority leases a newly constructed structure within six months after completion of construction, all work performed to suit the structure for occupancy by a public authority is a "public improvement." The appellees argued that the second sentence was inapplicable because the lease agreement was executed *before* construction was completed. The court rejected this argument because, although the parties' agreement predated construction, the county was undisputedly to lease the building within six months after completion of the renovation and, in fact, took occupancy upon completion. The court also rejected the appellees' argument that the building was not a "newly constructed structure," based on former R.C. 4115.03(B), which defined "construction" as " 'any construction, reconstruction, improvement, enlargement, alteration, repair, painting, or decorating, of any public improvement.' " *U.S. Corr. Corp.* at 220, 652 N.E.2d 766, quoting 137 Ohio Laws, Part II, 3851. Because the statutory definition of

"construction" equally encompassed construction and reconstruction, the court concluded that "newly constructed structure" encompassed a newly *reconstructed* structure, and that the renovation, therefore, constituted a "public improvement" under the second sentence of R.C. 4115.03(C).  *U.S. Corr. Corp.* at 220.

{¶ 14} The facts of this case closely parallel those in *U.S. Corr. Corp.*  As in that case, a lease between a private entity and a public authority required the private entity to complete renovations to the leased premises to make them amenable to a specified use by the public authority.[1]  In both cases, the renovations were completed pursuant to duties created by the lease, and the private entity was responsible for the costs of the renovations, without the use of public funds.  The leases in both cases were executed prior to construction of the renovations, with the public authority to have a possessory property interest in the renovated facility and to take possession of the premises upon completion.  Despite these striking similarities, the trial court did not cite *U.S. Corr. Corp.* in its decision.  Under the rationale of that case, however, we conclude that the project here was a "public improvement."

{¶ 15} With respect to the definition of "public improvement" in the first sentence of R.C. 4115.03(C), the project here is indistinguishable from the project at issue in *U.S. Corr. Corp.*  The lease was the animating force behind the renovation project, as AGA renovated the premises to meet its obligations under the lease.  Accordingly, as in *U.S. Corr. Corp.*, the project was constructed pursuant to a contract with a public authority.  Further, because DRC, a public authority, had a possessory interest in the renovated premises under the lease, the project was constructed for a public authority.  Hence, the project was a "public improvement" under the first sentence of R.C. 4115.03(C) and the test applied in *U.S. Corr. Corp.*; we need not address appellants' arguments under the second sentence.

{¶ 16} Appellees argue, however, that DOC has waived any argument that the project constituted a "public improvement" under the first sentence of R.C. 4115.03(C).  We disagree.  In its complaint, DOC broadly alleged that the project "is a public improvement as defined by R.C. 4115.03(C), and is subject to Ohio's Prevailing Wage Law."  Thus, DOC's complaint does not limit it to arguing that the project was a "public improvement" under the second sentence of R.C. 4115.03(C).  Additionally, appellees did not address the question whether the project was a "public improvement" or dispute its status as a "public improvement" in their motion for summary judgment but instead argued that the absence of any expenditure of public funds on the project precluded application of

---

1.  It is undisputed that both DAS and DRC are "public authorities," as defined in R.C. 4115.03(A).

prevailing-wage law. They argued, based solely on *Northwestern*, 122 Ohio St.3d 283, 2009-Ohio-2957, 910 N.E.2d 1025, that prevailing-wage law did not apply, "[b]ecause the State did not spend a single penny to renovate the Project." DOC did not file a cross-motion for summary judgment and was, therefore, not required to demonstrate that the project was a "public improvement," but only that the lack of public funding did not preclude application of prevailing-wage law. Moreover, the trial court's decision is premised on its conclusion that, absent an expenditure of public funds, prevailing-wage law did not apply, regardless of whether the project was a "public improvement." [2]

{¶ 17} We now turn to *Northwestern*, upon which appellees rely and upon which the trial court based its decision. The *Northwestern* syllabus states, as follows:

> The prevailing-wage law applies only when a public authority, including an institution, spends public funds to construct a "public improvement," which by definition must be constructed by a public authority or must benefit a public authority. (R.C. 4115.03, construed.)

Based on that language, the trial court stated that before Ohio's prevailing-wage law will apply, not only must a construction project qualify as a "public improvement" but, additionally, public funds must be expended on the project. Appellees argue that the trial court appropriately applied the specific language of the *Northwestern* syllabus, which states the law of that case. DOC, on the other hand, argues that the trial court erred by failing to read *Northwestern* in its entirety and in the context of earlier Supreme Court precedent regarding prevailing-wage law.

{¶ 18} Former Rep.R. 1(B) stated, "The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Effective May 1, 2002, however, Rep.R. 1(B) was amended to read, "The law stated in a Supreme Court opinion is contained within its syllabus (if one is provided), and its text, including footnotes." Rep.R. 1(C) now reads, "A syllabus * * * is not the controlling statement of the points of law decided, but is merely a research and indexing aid." Moreover, even prior to the amendment to Rep.R. 1, "[t]he syllabus of a Supreme Court opinion [was] not to be construed as being broader than the facts of that specific case warrant." *State v. McDermott* (1995), 72 Ohio St.3d 570, 574, 651 N.E.2d 985. Thus, this court must read the *Northwestern* syllabus along with, and in the context of, the text of the Supreme Court's opinion. Reading *Northwestern* in the context of its facts and in the

---

2. The trial court stated: "It does not matter what supposed tract in relation to R.C. 4115.03(C) a project is on; no public funds, no prevailing wage."

context of prior Ohio Supreme Court jurisprudence regarding prevailing-wage law, *Northwestern* does not represent the significant shift suggested by appellees and accepted by the trial court, nor does it add to the statutory requirements for the application of Ohio's prevailing-wage law.

{¶ 19} Before delving into the facts of *Northwestern*, 122 Ohio St.3d 283, 2009-Ohio-2957, 910 N.E.2d 1025, we first recognize that nothing in R.C. 4115.03(C) requires an expenditure of public funds for a project to qualify as a "public improvement." In fact, construing the first sentence of R.C. 4115.03(C), the Supreme Court held that a project may be said to be "for a public authority" if the public authority receives the benefit of the construction, "*either* through maintaining a possessory or property interest in the completed project *or* though the use of public funds in the construction of the project." (Emphasis added.) *Episcopal Retirement Homes*, 61 Ohio St.3d at 370, 575 N.E.2d 134. Thus, the use of public funds is not a necessary prerequisite for a construction project to qualify as a "public improvement." Indeed, had R.C. 4115.03(C) required an expenditure of public funds, the court's analysis in *Episcopal Retirement Homes* and *U.S. Corr. Corp.* would have been unnecessary because neither case involved a project paid for with public funds.

{¶ 20} In *Northwestern*, Fellhauer Mechanical Systems, Inc. ("Fellhauer"), a private contractor and retailer, purchased real property, the building standing thereon, and office equipment, after which it renovated a portion of the building. To finance the purchase and renovation, Fellhauer obtained private funding as well as public funding from "institution[s] supported in whole or in part by public funds."[3] Fellhauer used both public and private funds to finance the purchase of the real property, building, and office equipment, but used only private funds to finance the renovation. A state taxpayer and the Northwestern Ohio Building & Construction Trades Council ("Northwestern") filed an action for injunctive relief to compel compliance with the prevailing-wage law in connection with the public funds disbursed to Fellhauer.

{¶ 21} After the trial court and the court of appeals held that the Fellhauer project was not subject to Ohio's prevailing-wage law, the Supreme Court of Ohio accepted a discretionary appeal on four propositions of law, one of which stated, "Expenditures of an institution supported in part by public funds trigger prevailing wage applicability under R.C. 4115.03(A) as a matter of law." Id. at ¶ 13. At

---

**3.** R.C. 4115.03(A) defines "public authority" as "any officer, board, or commission of the state, or any political subdivision of the state, authorized to enter into a contract for the construction of a public improvement or to construct the same by the direct employment of labor, or any institution supported in whole or in part by public funds and [R.C. 4115.03 to 4115.16] apply to expenditures of such institutions made in whole or in part from public funds."

¶ 1, the Supreme Court concisely stated the issue before it, as well as its holding, as follows:

> We are asked to determine whether the mere expenditure of public funds by an institution, defined as a public authority in R.C. 4115.03(A) triggers the prevailing-wage requirement set forth in R.C. 4115.03 et seq. We hold that the wage requirement is triggered only when an R.C. 4115.03(A) institution spends public funds to construct a public improvement, which by definition must be constructed by a public authority or must benefit a public authority. Because the public funds herein were not spent on construction of a public improvement, we affirm the judgment * * * that the prevailing-wage law does not apply.

Thus, the specific issue before the Supreme Court was the following: where a public authority (specifically, in that case, an institution) spends public funds, must the expenditure be made on a "public improvement" to require compliance with the prevailing-wage law?

{¶ 22} The Supreme Court reiterated its prior holdings that prevailing-wage law applies to construction projects that are "public improvements." Id. at ¶ 15, citing *Episcopal Retirement Homes*, 61 Ohio St.3d at 369, 575 N.E.2d 134. The court rejected Northwestern's argument that an institution, as defined in R.C. 4115.03(A), is distinguishable from other public authorities, such that "once such an institution expends public funds, the prevailing-wage requirement applies automatically, regardless of whether the project * * * involves actual construction of a 'public improvement' as defined in R.C. 4115.03(C), which is normally required to trigger payment of prevailing wage." Id. at ¶ 17. The court reasoned that Northwestern's argument "would unjustifiably expand the scope of prevailing-wage law to include projects that are not public improvements, that are not constructed by a public authority, or that do not benefit a public authority." Id. at ¶ 19. At ¶ 20, the court stated as follows:

> Accordingly, we hold that the prevailing-wage law applies only when a public authority, including an institution, spends public funds to construct a "public improvement," which by definition must be constructed by a public authority or must benefit a public authority. See *Episcopal Retirement* [*Homes*] at 369, 575 N.E.2d 134 (a project must be constructed "for a public authority" in order for the prevailing-wage statutes to apply); Ohio Adm.Code 4101:9–4–02(BB)(1) and (2) (defining "public improvement" as a structure "[c]onstructed" by or for a public authority).

{¶ 23} The Supreme Court then proceeded to apply the standards for requiring prevailing-wage compliance to the facts in *Northwestern*, 122 Ohio St.3d 283, 2009-Ohio-2957, 910 N.E.2d 1025, and concluded that the Fellhauer project was not a "public improvement" because the project was not to be constructed by or

for a public authority but was, instead, intended for Fellhauer alone.   Id. at ¶ 22–23.   The question before the court was not whether public funds must be spent to implicate prevailing-wage requirements but whether, when public funds are expended, the project must still be a "public improvement" to require compliance with prevailing wage law.   The court concluded that the Fellhauer project was not subject to prevailing-wage laws, because none of the public funds at issue there were spent to finance any actual construction of a public improvement.   Id. at ¶ 24.

{¶ 24} According to appellees and the trial court, *Northwestern* broadly holds that a public improvement is not subject to prevailing-wage law unless public funds are spent on construction.   Such a broad reading of *Northwestern* represents a vast departure from the Supreme Court's analysis in *Episcopal Retirement Homes* and *U.S. Corr. Corp.*, both of which the Supreme Court favorably cited in *Northwestern.*   Contrary to appellees' suggestion, *Northwestern* does not effectively add a requirement to the statutory framework for determining whether a construction project is subject to prevailing-wage law, i.e., that a construction project need not only qualify as a "public improvement," but must also be publicly funded.   In the context of its facts, *Northwestern* is not inconsistent with *Episcopal Retirement Homes* and *U.S. Corr. Corp.*   The *Northwestern* court's holding that despite the expenditure of public funds by a public authority, prevailing-wage law applies only if the expenditure is made on a "public improvement," is consistent with the Supreme Court's statements in *Episcopal Retirement Homes,* 61 Ohio St.3d at 369, 575 N.E.2d 134, and *U.S. Corr. Corp.*, 73 Ohio St.3d at 218, 652 N.E.2d 766, that prevailing-wage law applies to "all construction projects that are 'public improvements.' "   Absent any indication to limit or overrule *Episcopal Retirement Homes* and *U.S. Corr. Corp.*, and in light of the court's reliance on those cases, we read *Northwestern* consistently with those cases and conclude that the lack of public funds does not preclude the application of prevailing-wage law here.   In holding otherwise, the trial court erred.

{¶ 25} For these reasons, we conclude that the trial court erred in granting summary judgment in favor of appellees based on the absence of public funds spent on the project.   We expressly decline, however, to address appellees' additional arguments regarding the constitutionality of Ohio's prevailing-wage statutes and/or alleged noncompliance with statutory duties by DAS or DOC, relating to prevailing wage.   The trial court has not considered and decided those issues, and we will not determine them in the first instance on appeal.   For these reasons, we sustain DOC's assignment of error to the extent supported by this decision.   Accordingly, we reverse the judgment of the Franklin County Court of

Common Pleas and remand this matter for further proceedings consistent with this decision and the law.

Judgment reversed
and cause remanded.

BRYANT, P.J., and CONNOR, J., concur.