JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiffs-appellants, Susan and Allen Holbrook, appeal the judgment of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Oxford Heights Condominium Association ("Oxford Heights") and Rustic Landscapes ("Rustic"). Finding no merit to appellants' appeal, we affirm.
 {¶ 2} Appellants commenced this action on March 20, 2001, asserting a breach of contract claim against Oxford Heights and claims for negligence and loss of consortium against both Oxford Heights and Rustic. Appellants' claims arose from an incident that occurred on January 23, 2000, when Susan Holbrook (`Holbrook") slipped and fell on ice as she was entering her condominium. In her deposition, Holbrook testified that at the time of the accident, she and her husband, Allen, had lived in the same condominium for twenty years. A cement sidewalk from the parking lot of the condominium complex led to the entrance of appellants' condominium; there was no rise or landing outside the door to the condominium.
 {¶ 3} According to Holbrook, she and Allen left their condominium at approximately 2:00 p.m. on January 23, 2000. The sidewalk was wet and Holbrook had earlier observed water dripping from icicles that hung from the gutters of the condominium. According to Holbrook, she had observed this dripping on other occasions and, in fact, was aware that it happened every winter. Holbrook had never had any previous problem with slipping or falling upon entering or exiting the condominium.
 {¶ 4} Holbrook testified that when she and Allen returned at approximately 9:00 p.m., they parked their car in the parking lot and walked down the sidewalk, which was covered with a "light dusting" of snow, to their condominium. Holbrook testified that the lighting at the entrance to the condominium was adequate because a "sensor light" was on and there were no defects in the pavement. As she stepped into the doorway of the condominium, her right foot slipped on the sidewalk outside the door and she fell forward into the condominium. According to Holbrook, the slipperiness of the ice on the cement caused her fall. Holbrook testified that she assumed, but was not sure, that the ice by the door came from the water dripping from the icicles hanging from the gutters.
 {¶ 5} Holbrook testified that there were no holes in the gutters and they did not appear to be hanging away from the eaves. Holbrook testified further that Allen had called the property manager at Oxford Heights several times during the winter prior to her fall to complain about ice forming on the ground from the water dripping from the gutters, although she was not aware of the specifics of the conversations.
 {¶ 6} On January 3, 2002, Oxford Heights filed a motion for summary judgment, arguing that it had no duty to protect Holbrook from the icy condition on the landing because it was a natural accumulation of ice and, therefore, an obvious hazard that she could reasonably be expected to discover and protect herself from.
 {¶ 7} Appellants filed a brief in opposition to Oxford Heights' motion, to which they attached their affidavits. Susan Holbrook's affidavit averred that she and Allen paid a monthly maintenance fee to Oxford Heights, in exchange for which Oxford Heights had agreed maintain the common areas of the condominium complex in a safe, clean condition. In direct contradiction of her deposition testimony, Holbrook averred further that the gutters on the condominium "back up and pull away, which causes snow and ice to overflow and form on the sidewalk leading to our unit. I slipped and fell because of this ice just outside my unit. * * * The roof gutter overhead had overflowed onto the sidewalk, which had not been salted and cleared in front of my unit."
 {¶ 8} Allen Holbrook similarly averred that he and his wife paid a monthly maintenance fee to Oxford Heights for the maintenance and timely repair of the common areas of the condominium complex. He stated further:
 {¶ 9} "In recent years, the Association has failed to maintain the common areas properly. The roof gutter above my front door was loose and pulled away from the roof when it became full, allowing the melted ice and snow to run off and accumulate in an unnatural condition on the sidewalk in front of our door and only entryway.
 {¶ 10} "I informed the Association people of this several times before my wife fell on January 23, 2000. I was informed it had been repaired.
 {¶ 11} "I was not aware that they did not properly fix the gutters until January 23, 2000 when ice and melted snow overflowed on the sidewalk in front of our unit and my wife fell hard on the walkway, because it was covered with fresh ice formed from water out of the gutter that had frozen and covered with snow while we were gone."
 {¶ 12} Also attached to appellants' brief in opposition to Oxford Heights' motion for summary judgment were several unauthenticated, undated pictures of the entryway to appellants' condominium and an unauthenticated letter dated "Winter, 1999/2000" from Continental Management Company to "Unit Owner." The letter stated in pertinent part:
 {¶ 13} "From time to time our office receives calls regarding the snowplow service. Listed below is the `Scope of Work' portion of the snowplow contract currently held with the Association snowplow contractor.
 {¶ 14} "SCOPE OF WORK
 {¶ 15} "* * *
 {¶ 16} "(B) All plowing is to be done when snow reaches an ACCUMULATED depth of two inches (2").
 {¶ 17} "(C) Snow accumulations of 2" or more shall be plowed by 6:00 a.m. each morning and if an additional 2" accumulation again by 5:00 p.m. each afternoon. * * *
 {¶ 18} "* * *
 {¶ 19} "(E) Sidewalks must be done by 9:30 a.m. or within Five (5) hours of initial plowing of snow exceeding two inches (2").
 {¶ 20} "(F) Icy conditions will be treated as the need occurs with potassium at an additional cost. * * *
 {¶ 21} "* * *
 {¶ 22} "(I) Frequency of snow removal shall not be limited by the two-inch factor if special circumstances shall make service necessary. (Examples: freezing rain, heavy thaw). This service will be done on a per-call basis at the discretion of the Board or the Management Company. * * *"
 {¶ 23} The trial court subsequently entered an order granting Oxford Heights' motion for summary judgment.
 {¶ 24} On March 29, 2002, appellee Rustic Landscapes, an independent contractor with whom Oxford Heights had contracted for snow plowing services, filed its motion for summary judgment, arguing, as had Oxford Heights, that it had no duty to protect Susan Holbrook from the ice at the entranceway to her condominium because it was the result of the natural freeze/thaw cycle of winter.
 {¶ 25} On May 9, 2002, the trial court granted Rustic's motion for summary judgment. In its opinion, the trial court noted that Holbrook's deposition testimony indicated that she was fully aware of the natural accumulation of snow and ice that occurred on the property surrounding her residence on the day she fell. The trial court noted further that appellants had not produced any evidence that appellees had acted negligently or failed to fulfill their obligations. Finally, the trial court noted that the statements in the affidavits attached to appellants' brief in opposition that the gutters were loose and pulled away from the roof contradicted Holbrook's deposition testimony. The trial court concluded that "in as much as these affidavits were used to establish defective gutters and defendants' knowledge of any defect, the court finds that the affidavits are not derived from personal knowledge and therefore do not comport with Civ.R. 56(E)."
 {¶ 26} Appellants timely appealed, raising two assignments of error for our review. Appellants' assignments of error contend that the trial court erred in granting appellees' motions for summary judgment and, therefore, will be considered together.
Summary Judgment Standard
 {¶ 27} Civ.R. 56(C) provides that summary judgment is appropriate when: 1) there is no genuine issue of material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. To obtain a summary judgment under Civ.R. 56(C), the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997),77 Ohio St.3d 421, 430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v.Wheeler (1988), 38 Ohio St.3d 112. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C). Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105;Renner v. Derin Acquisition Corp. (1996), 111 Ohio App.3d 326, 333.
Breach of Contract Claim
 {¶ 28} Appellants assert that the trial court erred in granting appellees' motions for summary judgment because there is a genuine issue of fact regarding whether the snow and ice at the entrance to their condominium should have been removed pursuant to the maintenance agreement between them and Oxford Heights and the contract for snow and ice removal between Oxford Heights and Rustic Landscapes, of which appellants contend they were third-party beneficiaries.
 {¶ 29} It is true that an intended third-party beneficiary may bring an action on a contract in Ohio. Grant Thornton v. Windsor House,Inc. (1991), 57 Ohio St.3d 158, 161. Appellants' complaint asserted only a negligence claim against Rustic, however; appellants never asserted a breach of contract claim against Rustic. Accordingly, we need not consider appellants' argument that Rustic breached its contract with Oxford Heights for snow and ice removal.
 {¶ 30} With respect to appellants' breach of contract claim against Oxford Heights, the document that appellants contend establishes the maintenance agreement between them and Oxford Heights is, in fact, not a contract. Appellants contend that the letter from Continental Management Company to "Unit Owner" attached to their briefs in opposition to appellees' motions for summary judgment establishes the maintenance contract between them and Oxford Heights. In Episcopal Retirement Homes,Inc. v. Ohio Dept. of Industrial Relations (1991), 61 Ohio St.3d 366,369, the Supreme Court of Ohio set forth the requirements for a contract:
 {¶ 31} "The Restatement of the Law 2d, Contracts (1981), 5, Section 1, defines a `contract' as `[a] promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty.' In order to declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain. (Citations omitted)." See, also, Krause, M.D. v. Case Western Reserve University (Dec. 19, 1996), Cuyahoga App. No. 70526.
 {¶ 32} The letter clearly does not meet these requirements. It is simply a letter to "Unit Owner[s]," which presumably included appellants, outlining certain provisions of the contract for snow and ice removal between Continental Management Company (who is not a party to this action) and Rustic. It does not address appellants' contractual obligations nor evince any "meeting of the minds" by appellants and Oxford Heights or either party's consent to the alleged contract. Therefore, it does not establish a maintenance contract between appellants and Oxford Heights.
 {¶ 33} The elements of a claim for breach of contract "include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Krause, supra, citingDoner v. Snapp (1994), 98 Ohio App.3d 597, 600. Here, without any evidence of a contract, appellants' breach of contract claim necessarily fails.[1]
 {¶ 34} Finally, even assuming for the sake of argument that the letter to all "Unit Owner[s]" somehow created a contract between appellants and Oxford Heights, we find, as the trial court did, that appellants failed to present any evidence regarding breach of its terms.
 {¶ 35} The alleged contract provided that snow accumulations of two inches or more were to be plowed by certain times each day. Susan Holbrook admitted in her deposition, however, that when she and her husband left their condominium at 2:00 p.m. on January 23, 2000, the sidewalk was wet, without any ice, and when they returned later that evening, the sidewalk was covered with only a "light dusting" of snow. Accordingly, appellants presented no evidence that there was a two inch or greater accumulation of snow on the sidewalk prior to Susan's fall that should have been removed pursuant to the contract.
 {¶ 36} The alleged contract also provided that icy conditions would be treated "as the need occurr[ed]." Appellants presented no evidence, however, regarding when the ice had formed or how long it had been on the ground. Exhibit "C" to appellants' brief in opposition, which purports to show the ice that had formed on appellants' walkway while they were gone, is undated and unauthenticated. Moreover, in her deposition, Susan Holbrook testified that she did not notice any ice on the sidewalk when she and Allen left their condominium at 2:00 p.m. and when they returned at approximately 9:00 p.m., the sidewalk was merely covered with a "light dusting" of snow. Accordingly, appellants failed to present any evidence that Oxford Heights breached its duty to treat the ice at the entryway to appellants' condominium.
 {¶ 37} Because appellants failed to establish a genuine issue of fact regarding whether there was a maintenance contract between them and Oxford Heights for the removal of snow and ice and whether Oxford Heights breached that contract, we hold that the trial court did not err in granting summary judgment to Oxford Heights regarding appellants' breach of contract claim.
Negligence Claims
 {¶ 38} Appellants contend that the trial court erred in granting summary judgment to appellees regarding their negligence claims because there are issues of fact that precluded summary judgment. It is well-settled that there is no general duty upon an occupier of land to warn invitees on the property against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them. Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203; Sidlev. Humphrey (1968), 13 Ohio St.2d 45, syllabus. "The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of [the] premises may reasonably expect that a business invitee on the premises will discover those dangers and protect himself against them." Id., paragraph two of the syllabus. The rationale is that an open and obvious danger itself serves as a warning, and that "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take the appropriate measures to protect themselves." Simmers v. Bentley Constr. Co. (1992),64 Ohio St.3d 642, 644. Therefore, an owner and occupier has no duty to remove natural accumulations of ice and snow from private walks and steps on the premises. Id., paragraph three of the syllabus.
 {¶ 39} There are exceptions, however, to the above-stated general rule. If an occupier is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on his or her premises has created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions prevailing generally in the area, negligence may be proven. Debie v. CochranPharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38; Gober v. Thomas King, Inc. (1997), Montgomery App. No. 16248. To become liable, the owner must have some "superior knowledge" of the existing danger or peril.LaCourse v. Fleitz (1986), 28 Ohio St.3d 209, 210. A second exception to the no-duty rule exists where the owner is actively negligent in permitting or creating an unnatural accumulation of ice and snow.Lopatkovich v. City of Tiffin (1986), 28 Ohio St.3d 204.
 {¶ 40} Thus, in order to prevail on their negligence claim, appellants must produce evidence that either the natural accumulation of snow and ice was substantially more dangerous than Susan Holbrook could have appreciated and that appellees knew or should have known this, or that appellees were actively negligent in permitting or creating an unnatural accumulation of ice and snow. See, e.g., Bailey v. St. VincentDePaul Church (May 8, 1997), Cuyahoga App. No. 71629.
 {¶ 41} Appellants contend that the ice on which Susan Holbrook fell was substantially more dangerous than she could have anticipated in light of the maintenance agreement for snow and ice removal between them and Oxford Heights. As discussed above, however, appellants failed to establish the existence of a maintenance agreement between them and Oxford Heights or, further, that the alleged contract was breached. Moreover, appellants failed to produce any evidence that the icy condition resulting from the dripping icicles hanging from the gutters was substantially more dangerous that Susan Holbrook could have anticipated. In her deposition, Holbrook testified that she had seen water dripping from icicles on the day of her fall. She testified further that she was aware that the dripping happened every winter and that ice formed on the ground as a result. Holbrook also testified that at the time of her fall, the sidewalk was properly lighted and there were no defects in the pavement. Furthermore, appellants did not produce any evidence that appellees had any "superior knowledge" of the icy condition. There was no evidence that anyone, including appellants, had reported the icy condition of the sidewalks on January 23, 2000 to appellees.
 {¶ 42} Holbrook is an adult and has lived in Ohio for at least twenty years. "Snow and ice are a part of wintertime life in Ohio and hazardous winter weather conditions and their attendant dangers are to be expected in this part of the country." Mayes v. Boymel, Trustee, Butler App. No. CA2002-03-051, 2002-Ohio-4993, citing Plymdale v. Sabina PublicLibrary (Dec. 21, 1987), Clinton App. No. CA87-02-005. Because of Holbrook's testimony regarding her knowledge of the conditions prevailing in the area on the day of her fall, and during the winters prior to her fall, we do not find that the ice on which she fell was a substantially more dangerous condition than she could have reasonably anticipated. See, e.g., Swarts v. Harper (Aug. 27, 1998), Cuyahoga App. No. 73973;Bailey, supra.
 {¶ 43} Next, appellants contend that the ice on which Susan fell was an unnatural accumulation of ice caused by the failure of Oxford Heights to adequately maintain the roof gutters above the entryway to their condominium.
 {¶ 44} In Hoenigman v. McDonald's Corp. (Jan. 11, 1990), Cuyahoga App. No. 56010, this court stated:
 {¶ 45} "`Unnatural' accumulation must refer to causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow, i.e., to causes other than by the meteorological forces of nature. By definition, then, the `unnatural' is the man-made, the man-caused * * *.
 {¶ 46} "Since the build-up of snow and ice during winter is regarded as a natural phenomenon, the law requires, at the very least, some evidence of an intervening act by the landlord (or a property owner) that perpetuates or aggravates the pre-existing, hazardous presence of ice and snow."
 {¶ 47} Appellants assert that their affidavits created a question of fact regarding whether the roof gutter above their entryway was loose and pulled away from the roof when it became full, thereby allowing melting ice and snow to run off and accumulate on the sidewalk in front of the entrance to their condominium.
 {¶ 48} It is well-established, however, that a party may not attempt to create a genuine issue of material fact by submitting an affidavit directly contradicting his or her prior sworn deposition testimony in response to a defendant's summary judgment motion. Wyatt v.Ohio Dept. of Transportation (1993), 87 Ohio App.3d 1, 6. Susan's affidavit directly contradicts her deposition testimony that the gutters were not loose or pulled away from the roof. Accordingly, we find that her affidavit does not constitute competent evidence which would support appellants' allegation that Oxford Heights failed to properly maintain the roof gutters, thereby allowing an unnatural accumulation of ice to accumulate on the sidewalk.
 {¶ 49} We note that Allen did not give any deposition testimony; therefore, the statements in his affidavit regarding the gutters do not contradict any earlier testimony. Moreover, contrary to the trial court's opinion, his affidavit is, in fact, based on his personal knowledge and, therefore, comports with Civ.R. 56(E). Allen's affidavit, however, is not sufficient to create an issue of fact regarding the gutters.
 {¶ 50} In his affidavit, Allen states that he had informed Oxford Heights of the problem with the gutters several times before Susan fell. He concedes, however, that Oxford Heights had fixed the gutters in response to his complaints. Moreover, although Allen asserts that Oxford Heights "did not properly fix the gutters," he offers no evidence to support this assertion.
 {¶ 51} Accordingly, we find that appellants failed to produce any evidence that Oxford Heights was "actively negligent in permitting or creating an unnatural accumulation of ice and snow." In the absence of evidence regarding the land owner's negligence, the freeze and thaw cycle accompanying the winter climate in northeastern Ohio remains a natural accumulation. Bailey, supra. Accordingly, Oxford Heights had no duty to protect Susan Holbrook from the ice that had accumulated on the entryway to her condominium.
 {¶ 52} An independent contractor employed on the property of a landlord enjoys the same immunities from liability as does the landlord.Yanda v. Consolidated Management Inc. (Aug. 16, 1990), Cuyahoga App. No. 57268. Thus, our determination that Oxford Heights had no duty to protect Susan Holbrook from the ice mandates a finding that Rustic similarly had no duty toward her.
 {¶ 53} After construing the evidence most favorably to appellants, we find that the record discloses no genuine issue of material fact. Thus, appellees were entitled to judgments as a matter of law. Accordingly, both of appellants' assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. AND JAMES J. SWEENEY, J. CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Appellants also failed to provide any evidence of their performance of the alleged maintenance contract between them and Oxford Heights (i.e., payment of the monthly maintenance fee).