OPINION
{¶ 1} Plaintiffs-appellants David Outland et al. ("the Outlands") brings this appeal from the judgment of the Court of Common Pleas of Wyandot County finding in favor of defendants-appellees Heritage Custom construction et al. ("Heritage"). For the reasons to follow, this appeal is reversed and the cause remanded for a new trial.
 {¶ 2} On April 2, 1999, the Outlands and Heritage entered into a contract for the construction of an addition to the Outlands' home for a fixed-price of $65,000. The contract was taken to the Outland's lending bank and several handwritten addenda were added at the request of the loan officer. The addenda were signed by both parties. The typed terms of the contract are as follows.
 {¶ 3} "Heritage Custom Construction agree to do the work described below for david (sic) Outland[.]
 {¶ 4} "Add 660 sq ft to existing structure for master bed room Master bath laundry, 1/2 bath and lundry (sic) area[.]
 {¶ 5} "Add 466 sq ft to existing structure for dinning (sic) area[.]
 {¶ 6} "Remove interior walls in garage to create 3 car garage[.]
 {¶ 7} "Anderson Window and Doors Ceader (sic) siding 30 Year Shingles[.]
 {¶ 8} "$65,000.00[.]
 {¶ 9} The handwritten terms added by Heritage at the request of the lender calls for oak trim, oak raised panel interior doors, aqua glass tub and shower, hardwood flooring, tile bathroom area.[1]
Following these additions, the contract is signed by Mike Lewis, one of the owners of Heritage, and David Outland.
¶ 10 Over the course of construction, several questions arose about which party was responsible for which items. After the construction of the walls and the roof, Heritage's workers left the site and Heritage submitted bills in excess of $60,000.00. The Outlands then paid Heritage an additional $870.40 in order to have the windows installed and the remainder of the siding put into place. On July 10, 1999, Heritage signed a waiver of mechanics lien verifying that all subcontractors had been paid to date. Heritage then received a bank draw in the amount of $45,000.
¶ 11 On July 20, 1999, Heritage placed a mechanic's lien in the amount of $25,626.38 on the home.[2] The lien was reduced to $20,139.00 prior to trial. From February 11 to February 15, 2002, a jury trial was held. At the trial, the Outlands testified that they had entered a contract for all of the work to be done for $65,000. They testified that the work was not completed, for windows were not installed, the siding was not finished, doors were not supplied, the garage walls were not removed, and none of the trim work was completed. The Outlands attempted to testify about their understanding of what was covered by the contract. However, the trial court interrupted and would not permit them to give their interpretation of the contract, ruling that the contract would speak for itself. At the close of the Outland's case, the trial court dismissed all claims except the breach of contract claim.
¶ 12 The owners of Heritage then testified that they had not installed or supplied any of the trim and that they had not removed all of the interior walls in the garage as provided in the contract. They then testified as to the amount of work they had done and the work they believed to be covered by the contract. The owners of Heritage then testified as to the cost of all of the supplies for the job and the cost of the labor. No attempt was made to differentiate from items that they considered covered by the contract and items that they considered to be changes.[3] The owners of Heritage testified that they had submitted a final bill for more than $70,000.00 to the Outlands despite the fact that the contract called for a fixed price of $65,000.00. One owner of Heritage testified that there really was not a contract because the document signed by the parties was prepared just to show the lender. According to his testimony, Mr. Outland had agreed to pay all additional costs out of his own pocket and the contract was only to cover what the bank would pay. At the close of Heritage's case in chief for the counterclaim, the Outlands moved to dismiss it, but that motion was overruled.
¶ 13 On rebuttal, the Outlands again attempted to testify as to the items they believed to be included in the contract. Once again the trial court stopped them and informed them that they could not testify about what the contract meant. While discussing the jury instructions, the Outlands requested an instruction that stated that any ambiguity in a contract may be construed against the drafter. The trial court refused to give the instruction stating that there was a conflict as to who drafted the contract and that he believed the bank did so, and therefore that instruction was inappropriate. The Outlands argued that Heritage drafted the contract and that although they included some additional terms at the request of the bank, one of the owners of Heritage wrote the extra terms on the contract and signed the contract. The trial court refused to give the instruction anyway.
¶ 14 The trial court then gave the instructions to the jury. Several times during the instructions, the trial court referred to the Outlands as "the Outlaws." Twice the trial court caught the mistake, but then continued to make the same mistake several more times. The jury returned a verdict for Heritage on the complaint and on the counterclaim. It is from this judgment that the Outlands appeal and raise the following assignments of error.
 ¶ 15 "The trial court erred at page 697 of the Transcript, Volume Four, when it denied [the Outlands'] motion for a directed verdict on [Heritage's] counterclaim.
 ¶ 16 "The trial court erred at pages 600-701 of the Transcript, Volume Four, when it failed to sustain [the Outlands'] objections to the admission of [Heritage's] Exhibits B and C, which are the lists of the cost of materials used and the time and cost of labor performed under the parties' fixed-price construction contract.
 ¶ 17 "The jury verdict is against the manifest weight of the evidence.
 ¶ 18 "The trial court erred when it repeatedly refused to permit [the Outlands] to introduce extrinsic evidence to explain the terms of the written construction contract, Exhibit 3, and what they perceived was to be done by [Heritage] pursuant to the contract but repeatedly permitted [Heritage] to introduce extrinsic evidence to explain the terms of the contract.
 ¶ 19 "The trial court erred when it gave Jury Instruction No. 11 (Tr. Vol. 4 page 686, lines 15, et seq.) relative to the contract's ambiguity after preventing [the Outlands] from testifying as to their understanding of the meaning of the contract's terms.
 ¶ 20 "Whether the trial court erred when it refused to give [the Outlands'] jury instruction at the sixth unnumbered proposed jury instruction of [the Outlands'] Proposed Special Jury Instructions filed with the trial court on June 8, 2001, on the issue of a contract being construed against the drafter.
 ¶ 21 "The trial court erred at page 372 of the Transcript, Volume Two, when it granted the motion of [Heritage] for directed verdict as to [the Outlands'] request for (1) an injunction and (2) a declaratory judgment specifically authorized under the Consumer Sales Practices Act by [R.C. 1345.09(D)].
 ¶ 22 "The trial court erred at page 699 of the Transcript, Volume Four, when it granted the motion of [Heritage] for directed verdict as to [the Outlands'] claim for slander of title vis a vis the mechanic's lien recorded by [Heritage] against the property of [the Outlands] as there existed a genuine issue of material fact as to whether the affidavit that supported the lien was false.
 ¶ 23 "The trial court [erred] when it refused to admit into evidence Exhibit 27 which is [the Outlands'] response to [Heritage's] request for production of documents at page 469, Volume 3, lines 6-11, and at page 472, 18-19, and at page 473, lines 7-8.
 ¶ 24 "The trial court erred during the cross-examination of [David Outland] when it permitted [Heritage] to `blackboard' each of [the Outlands'] claims as contained in their amended complaint and to add the monetary relief sought in each cause of action thereby implying that [the Outlands] sought to recover 1.8 million dollars from [Heritage].
 ¶ 25 "The trial court erred when it refused to charge the jury per [the Outlands'] request at the fourteenth unnumbered proposed jury instruction of [the Outlands'] proposed special jury instructions filed with the trial court on June 8, 2001, that a party cannot obtain multiple or cumulative recoveries as only one recovery is permitted irrespective of the number of claims upon which a party prevails.
 ¶ 26 "The trial court erred at page 369-70 of the Transcript, Volume Two, when it granted the motion of [Heritage] for directed verdict as to [the Outlands'] claim for fraudulent conveyance.
 ¶ 27 "The trial court refused to permit the introduction into evidence of [the Outlands'] Exhibit 25 which is a notebook of all of the receipts from [the Outlands'] finishing the construction project which they attempted to testify should have been done by [Heritage] under the contract. (Tr. Vol. Two page 367, lines 21-25; page 368; page 369, lines 1-17."
 ¶ 28 In the fourth assignment of error, the Outlands claim that the trial court permitted Heritage to admit parole evidence about the contract, but prevented them from doing so which denied them a fair trial. The admission of evidence is left to the discretion of the trial court. Rigby v. Lake County (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056. The judgment of the trial court will not be reversed absent an abuse of discretion. Id. Here, there were several instances when the Outlands attempted to testify as to what they believed the contract included. Every time they mentioned something not specifically stated in the contract, the trial court, either upon objection by Heritage or sua sponte, would stop the testimony and tell the witness that the contract would speak for itself. However, when witnesses for Heritage testified as to what was done as part of the contract and what they considered to be changes to the contract, the trial court permitted the testimony. The trial court held that the testimony was being used to prove the counterclaim for work done for changes to the contract, but for which Heritage had not been compensated. On rebuttal, the Outlands attempted to testify that the alleged changes were really included in the contract. Once again the trial court stopped the testimony and limited it to the specific terms of the contract.[4]
 ¶ 29 A contract is only binding if it is definite and certain.Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations
(1991), 61 Ohio St.3d 366, 575 N.E.2d 134. A valid contract must be specific as to its essential terms, such as the nature and substance of the services to be provided. Alligood v. Procter Gamble Co.
(1991), 72 Ohio App.3d 309, 594 N.E.2d 668. If these essential terms are not present, then it is not a valid agreement, but rather an agreement to make an agreement. Id. In this case, the alleged contract is titled "quote" and only provides a very general overview of what is to occur and then lists a price to be paid. There is no way to tell what actions are required to fulfill the contract by the terms of the contract. Thus, a question arises whether a written contract really exists in this case.
¶ 30 The basis for the trial court's exclusion of the testimony in this case was the parol evidence rule. "The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements." Ed Schory Sons, Inc. v. Soc. Natl.Bank (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074.
 ¶ 31 "In a broad sense, the goal of interpretation of legal documents is to determine the intent of the parties. If this goal can be achieved through examination of the document alone, parol evidence is unnecessary. But where, as here, the language of a document is general, reference to the circumstances surrounding the formation of the document is necessary to a complete understanding of the agreement contained therein." Stony's Trucking Co. v. Pub. Util. Comm.
(1972), 32 Ohio St.2d 139, 142, 290 N.E.2d 565.
 ¶ 32 In this case, the trial court denied the Outlands the opportunity to explain the background of the signed contract ordering that the document would speak for itself. Since the document's terms are general, the parol evidence rule does not apply and the Outlands should have been permitted to testify. This is especially important since the owners of Heritage were permitted to introduce parol evidence. The fourth assignment of error is sustained.
¶ 33 In the eleventh assignment of error, the Outlands argue that the trial court erred by permitting Heritage's counsel to place all of the theories of the case on a blackboard along with the damages claimed under each theory. The Outlands claim that this was misleading because recovery of some of the claims would be banned under the prohibition against double recovery.
¶ 34 In its complaint, the Outlands alleged damages for breach of contract, violation of the consumer sales practices act, fraud and misrepresentation, slander of title, and unworkmanlike performance. The claim for breach of contract and unworkmanlike performance are based entirely upon the same facts, that Heritage did not complete the job as specified in the contract. Thus, those two are alternative theories of recovery and cannot both be the basis of recovery. However, the remaining claims can stand on their own and would entitle the Outlands to additional recovery. Since it is not error for a trial court to permit the jury to hear what the plaintiff wants as recovery, the trial court did not abuse its discretion by permitting Heritage to place the amounts on the blackboard during cross-examination of David Outland. The eleventh assignment of error is overruled.
¶ 35 In the tenth assignment of error, the Outlands claim that the trial court should have admitted Heritage's request for production of documents. During the cross-examination of Dawn Outland, counsel for Heritage brought out a bill that had been submitted to Heritage by Dawn Outland for shrubbery that had occurred prior to the construction contract. Counsel claimed that the bill was submitted in response to an interrogatory requesting all receipts in support of the damages claimed. Counsel then implied that Dawn Outland had padded the claim by submitting bills that were not related to the damages claimed. On rebuttal, counsel for the Outlands wished to show that the bill for the shrubbery was supplied in response to another interrogatory requesting receipts for all improvements made to the property in the prior ten years by admitting a copy of the interrogatory. The trial court refused to admit the latter evidence.
¶ 36 As discussed above, the admission of evidence is left to the discretion of the trial court. Counsel for the Outlands was able to rehabilitate his witness by having her testify that there was a second interrogatory for which the bill was sent. She also testified that the shrubbery bill was not intended to be part of the damages claimed. There was no real need to have the written interrogatory admitted into evidence. Thus, the trial court did not err in excluding it.
¶ 37 The fourteenth assignment of error alleges that the trial court erred in excluding the notebook of receipts for the bills. This notebook was completed by Dawn Outland and she testified that it contained the bills for the remainder of the remodeling project that Heritage was supposed to have completed. She did not individually identify each and every bill, but she did identify the exhibit as a whole. Given the record of this case, this court probably would have admitted the evidence. However, the trial court chose not to do so. We cannot say that the trial court abused its discretion in refusing to admit the evidence. Thus, the fourteenth assignment of error is overruled.
¶ 38 The second assignment of error raises the issue of whether the trial court should have admitted Heritage's summary of costs of materials and labor. The record before this court shows that the parties and the trial court treated this as a fixed-price contract with additional changes occurring. Under a fixed price contract, Heritage would only be entitled to the contract price for the completed job plus time and materials for any changes. Thus, only the amount spent on the changes was relevant. Neither of the owners of Heritage broke down the summaries into what was part of the contract and what was the result of a change. This court might have reached a different decision given the record in this case[5]. However, we do not find that the trial court abused its discretion. The second assignment of error is overruled.
¶ 39 In the fifth assignment of error, the Outlands argue that the trial court erred by instructing the jury that the contract was ambiguous. The Outlands objection to the instruction was that it was inconsistent with the way the trial was conducted. During the trial, the Outlands were not permitted to testify to anything outside the four corners of the document. However, the owners of Heritage were permitted to testify to what they considered to be in the contract and what they considered to be changes. The Outlands argue that by limiting the ability of one side to admit parol evidence while permitting the other side to do so results in an unfair trial. This result was compounded by instructing the jury that the contract was ambiguous and they could determine its meaning when only one side was able to put forth its view of the meaning.
¶ 40 As discussed above, both sides should have been permitted to testify as to the meaning of the terms of the agreement. The failure to do so was an error that resulted in the appearance of an unfair trial. However, requested jury instructions should ordinarily be given if they are correct statements of law, that are applicable to the facts in the case, and reasonable minds might reach the conclusion sought by the specific instruction. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 575 N.E.2d 828. The instruction requested by Heritage was a correct statement of law and was applicable to this case. Although the instruction may have amplified the effect of the prior error, it was still a proper instruction. Therefore, the trial court did not abuse its discretion by giving a jury instruction on ambiguity. The fifth assignment of error is overruled.
¶ 41 The sixth assignment of error alleges that the trial court erred in not giving an instruction about interpreting any ambiguities in the contract against the drafter. In this case, the Outlands requested that the trial court instruct the jury that any ambiguities in the contract be held against the drafter. This is a correct statement of law and would apply to the case since the trial court instructed the jury that there were ambiguities in the contract. The trial court, however, refused to give the instruction because it made a finding of fact that the drafter of the contract was the bank. The trial court based this decision on Heritage's claim that the additions to the contract were made at the request of the bank. Although this may be true, Heritage still was responsible for the drafting of the remainder of the alleged contract. In addition, one of the owner's of Heritage admits that he physically wrote the additions to the contract and that he agreed to those changes. Given this evidence, a reasonable jury could conclude that Heritage was the drafter of the entire contract. The trial court erred in making a factual finding that the bank drafted the contract and in refusing to give the requested instruction. The sixth assignment of error is sustained.
¶ 42 The Outlands argue in the twelfth assignment of error that the trial court should have instructed the jury that plaintiffs were only entitled to one recovery regardless of the number of claims which would support that recovery. During this trial, the trial court entered directed verdicts on all of the Outlands claims except for the breach of contract claim. Since only one claim was going to the jury, the instruction on multiple recovery was not necessary. Counsel for the Outlands could have informed the jury during rebuttal that the only amount the Outlands were seeking at that time was recovery on the breach of contract claim. Since the instruction was not necessary, the twelfth assignment of error is overruled.
¶ 43 In the first, seventh, eighth, ninth, and thirteenth assignments of error, Outland claims that the trial court erred by either granting or denying motions for directed verdicts. The third assignment of error raises the question whether the verdict was against the manifest weight of the evidence. Since we have held that there were errors at law made during this trial and that those errors necessitate a new trial, these claims are moot and need not be addressed by this court.
¶ 44 The judgment of the Court of Common Pleas of Wyandot County is reversed and the cause is remanded for further preceedings.
Judgment Reversed.
 SHAW, P.J. and HADLEY, J., concur.
[1] David Lewis admitted that the additions were made by him at the bank.
[2] This lien was put into place even though the total amount collected by Heritage if the lien was paid in full would exceed the contract price by more than $6,000.
[3] Both of the owners testified that they did not use written change orders as a matter of practice and that all changes were done on verbal orders of the Outlands. However neither owner testified that they informed the Outlands that any changes would result in an increase in the price.
[4] The trial court excluded testimony by Mrs. Outland that was about the dining room because she called it a kitchen rather than a dining room. Even after she testified that the rooms were one and the same, the trial court excluded it because the contract called for a dining room, not a kitchen.
[5] Specifically, the Outlands records were excluded for lack of identification as to each charge. Thus, either Heritage's summary should have been excluded for the same reason or both should have been admitted.