4

TAYLOR et al.

v.

The DOUGLAS COMPANY et al.

2004-Ohio-7348.]

Court of Common Pleas of Ohio,
Lucas County.

No. CI 02–4751.

Decided July 1, 2004.

Joseph M. D'Angelo, for plaintiffs.

Richard A. Chase, for defendants.

JAMES D. JENSEN, Judge.

{¶ 1} This cause is before the court upon motions for summary judgment filed by defendants the Douglas Company ("Douglas") and Precision Panel, Inc. ("Precision") and plaintiffs. Upon consideration of the pleadings, memoranda of counsel, and applicable law, this court finds the plaintiffs' motion well taken, and it is granted. The defendants' motions for summary judgment are found not well taken, and they are denied.

I

{¶ 2} This dispute arose out of the construction of four buildings totaling 52 units of affordable housing located at 14th and Adams Street in downtown Toledo, Ohio, and commonly referred to as the Toledo Uptown project. A construction contract for the project was entered into by Adams Street Limited Partnership (the developer) and Adams Street, L.L.C. (the general contractor) on May 31, 2001. Another construction contract was entered into by Adams Street, L.L.C. and Douglas on June 27, 2001. The housing facility was developed as an affordable housing project under Section 42 of the Internal Revenue Code, in which units are rented to individuals who are income-qualified pursuant to the rules and regulations promulgated by the Internal Revenue Code. The city of Toledo leased the developer the real property upon which the project was constructed for 60 years at one dollar per year pursuant to a ground lease.

{¶ 3} On or about August 8, 2001, Douglas subcontracted parts of the project to Winbigler Lumber Company, Jeromesville, Ohio ("Winbigler"). The subcontract covers the wall panels and miscellaneous lumber for the construction of the project. Winbigler subcontracted the labor for the installation of the paneling to Precision. All of the plaintiffs who worked on the project were employed by Precision.

{¶ 4} To finance the project, the developer obtained funds from the following sources: (1) a loan from Charter One Bank consisting of a May 16, 2001, commitment in the amount of $4,360,000; (2) a $500,000 HOME loan from the city of Toledo consisting of a July 12, 2000, commitment; (3) a $350,000 grant from the Capital Improvement Funds Program from the city of Toledo; (4) a $297,346 Housing Credit from the Ohio Department of Development; (5) $220,000 from a funding agreement between the Ohio Department of Development and Buckeye Community Hope Foundation; and (6) a commitment letter dated May 18, 2001, issued by Equity Fund for Housing Limited Partnership X concerning the purchase of tax credits in the sum of $2,990,056.

{¶ 5} On November 13, 2001, Mike Steigerwalt filed a prevailing-wage complaint with the Director of Commerce, pursuant to R.C. 4115.10(B). The director investigated the complaint, and on August 14, 2002, the Ohio Department of Commerce, Division of Labor and Worker Safety, rendered a finding that Precision had underpaid its employees in violation of the Ohio Prevailing–Wage Law. The total amount of liability assessed by the director's determination was $107,633.16. However, three employees who are not party plaintiffs authorized the director to collect their back pay. Accordingly, plaintiffs seek $102,194.79 in this action.

{¶ 6} Plaintiffs filed this lawsuit on September 13, 2002, to collect monies they believe are owed to them pursuant to R.C. 4115.10(A). Defendants have filed two separate motions for summary judgment, the first on behalf of both defendants, Douglas and Precision, and the second one on behalf of Douglas. Plaintiffs have opposed both motions and have filed their own motion for summary judgment. These motions are now before the court for decision.

II

{¶ 7} In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46, the Supreme Court of Ohio stated the requirements that must be met before a Civ.R. 56 motion for summary judgment can be granted: "The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly is his favor."

{¶ 8} A party who claims to be entitled to summary judgment on the grounds that a nonmovant cannot prove its case bears the initial burden of (1) specifically identifying the basis of its motion and (2) identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding an essential element of the nonmovant's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant satisfies this burden by calling attention to some competent summary judgment evidence of the type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. Id. Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue of material fact exists for trial. Id. Accord *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798.

### III

{¶ 9} Two issues are presented in this case. The first is whether Ohio's Prevailing–Wage Law is applicable to the project. The second issue is, if Ohio's Prevailing–Wage Law applies, whether Douglas, as general contractor, is liable for the wage violations of its subcontractor Precision.

{¶ 10} The court will first address the issue of whether the Ohio Prevailing–Wage Law applies to the project. Pursuant to R.C. 4115.10(A), the prevailing-wage law in Ohio applies to all construction projects that are public improvements. See *Harris v. Cincinnati* (1992), 79 Ohio App.3d 163, 169, 607 N.E.2d 15. To be considered a public improvement, a project must be constructed (1) pursuant to a public contract with a public authority and (2) for a public authority. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

{¶ 11} Defendants contend that the project was not undertaken by a public authority and that it was not constructed pursuant to a contract with a public authority. R.C. 4115.03(A) defines a public authority to include, in addition to the state, political subdivisions thereof, other units of government, and "any institution supported in whole or in part by public funds." The project owner and developer is Adams Street Limited Partnership. Its two general partners are Adams Street, L.L.C. and Adams Housing Partners, Inc. Adams Housing Partners, Inc. is wholly owned by two public charities: the Buckeye Community Hope Foundation, Inc. and the Palmetto Community Hope Foundation, Inc. Both of these public charities are institutions supported in part by public funds and are, therefore, public authorities within the definition of R.C. 4115.03(A).

{¶ 12} A project is constructed for a public authority when public funds are expended on the project or a public authority retains an interest in the improvement. *Episcopal Retirement Homes, Inc.,* 61 Ohio St.3d at 370, 575 N.E.2d 134. Defendants assert that the project is not a public improvement within the meaning of R.C. 4115.03 because the public funding consists only of federal funds and no state funds that would trigger the prevailing-wage law.

{¶ 13} R.C. 4115.03(C) defines public improvement as including "all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, *pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof.*" (Emphasis added). The funding of this project has been provided by a number of different sources. When the court looks at the funding of this project, it is clear that state funds were used. For example, the $220,000 loan/grant from Buckeye Community Hope Foundation came from a

state fund, to wit, an Ohio Department of Development/ Ohio Housing Finance Agency ("ODOD/OHFA") grant. R.C. 175.22 directs the ODOD and the OHFA to develop financial assistance programs by which they "may make grants, loans, loan guarantees, and loan subsidies to * * * nonprofit organizations * * * for * * * constructing * * *publicly or privately owned housing." R.C. 175.22(A) and (A)(1). Further, the funding agreement that commits the $220,000 loan to the project explicitly states that it is a R.C. 175.22 program. Based upon these facts, this court finds that the prevailing-wage rate applies because the construction project was constructed by an institution supported in part by public funds and was for a public authority.

■■ {¶ 14} Next, the court will address the issue of whether Douglas is liable for the prevailing-wage violations of Precision. Where prevailing wages apply, the successful bidder and all its subcontractors must strictly comply with the law. *Harris v. Bennett* (July 26, 1985), Lucas App. No L–84–446, 1985 WL 7558. The successful bidder is the contractor that is awarded a contract to perform construction in connection with a public improvement. R.C. 4115.06. Further, "the statute imposes liability not only upon persons who require employees to work for less than the prevailing-wage rate but also upon persons who suffer or permit employees so to work, regardless of whether such person is the actual employer." *Cremeans v. Jinco* (June 5, 1986), Franklin App. No. 85AP–821, 1986 WL 6334.

{¶ 15} The "Development Agreement Between the City Of Toledo And Adams Street Limited Partnership" authorizes the expenditure of $355,000 by the city of Toledo for the acquisition of the property to be leased to the developer. It specifically states in paragraph (E) that the work shall be in accordance with the laws of the state and city and that "wages paid to laborers and mechanics employed on Project shall be paid at the prevailing rate of wages of laborers and mechanics, * * * which wages shall be determined * * * to the extent applicable of Chapter 4115 of the Ohio Revised Code." This agreement clearly shows that prevailing-wages were to be paid on the project.

■ {¶ 16} R.C. 4115.06 requires that the successful bidder guarantee prevailing-wage compliance not only for himself but also for anyone who actually performs his contract. *Harris v. Bennett* (July 26, 1985), Lucas App. No. L–84–446, 1985 WL 7558. Although it is disputed whether Douglas was the general contractor or a subcontractor, Douglas was the successful bidder on the contract. Even though plaintiffs were in the employ of Precision, they were performing work covered by Douglas's contract. Therefore, Douglas is liable for the violation of the prevailing-wage law by Precision.

{¶ 17} Having found that the project was constructed by a public authority and for a public authority, the court finds that Ohio's Prevailing–Wage Law applies. The court further finds that Douglas was the successful bidder on the contract and is, therefore, liable for the wage violations of Precision. Accordingly, defendants' motions for summary judgment will be denied, and plaintiffs' motion for summary judgment will be granted.

## JUDGMENT ENTRY

{¶ 18} It is ordered that defendants' motions for summary judgment are denied.

{¶ 19} It is further ordered that plaintiffs' motion for summary judgment is granted.

{¶ 20} It is further ordered that the clerk of courts shall serve a copy of this judgment entry upon all parties.

{¶ 21} This is a final appealable order.

Judgment accordingly.